(No. 99441.—

C. AUGUST TADDEO, Appellee, v. THE BOARD OF TRUSTEES OF THE ILLINOIS MUNICIPAL RETIREMENT FUND *et al.*, Appellants.

*Opinion filed October 6, 2005.*

FREEMAN, J., joined by KILBRIDE, J., specially concurring.

Michael B. Weinstein, of Oak Brook, for appellant Illinois Municipal Retirement Fund.

Robert J. Wagner, of Crystal Lake, for appellee.

Dan M. Slack, of Champaign, and Charles F. Regan, Jr., of Mayer, Brown, Rowe & Maw, L.L.P., of Chicago, for *amicus curiae* State Universities Retirement System of Illinois.

Thomas Gray, of Springfield, and William D. Heinz and Zachary V. Moen, of Jenner & Block, L.L.P., of Chicago, for *amicus curiae* Teachers' Retirement System of the State of Illinois.

James C. Bakk, of Waukegan, for *amicus curiae* Robert L. Grever.

JUSTICE McMORROW delivered the opinion of the court:

The question of statutory interpretation presented in this appeal is one of first impression: Whether, pursuant to section 7—219 of the Illinois Pension Code (40 ILCS 5/7—219 (West 1998)), a participant in the Illinois Municipal Retirement Fund (IMRF) who earns concurrent service credits due to simultaneous employment with two participating municipalities[1] forfeits his rights to *all* IMRF pension benefits if he is convicted of a felony

---

[1] A "municipality" is defined in section 7—105 of the Illinois

which is related to or arises out of or in connection with the participant's service to only one participating municipality.

## BACKGROUND

In 1969, C. August Taddeo became township supervisor for Proviso Township in Cook County and held this position until his retirement in 1999. Upon his election to the position of township supervisor, Taddeo became a participant in the Illinois Municipal Retirement Fund. In 1972, while maintaining his position as township supervisor, Taddeo became mayor of Melrose Park and served in that capacity from 1972 until 1997. From 1977 until 1997, Taddeo earned concurrent service credits, as provided in article 7 of the Illinois Pension Code (the Code), due to his participation in, and contributions to, the IMRF as both township supervisor and mayor.

In August 1999, Taddeo entered a guilty plea in the United States District Court for the Northern District of Illinois. He admitted that, as mayor of Melrose Park, he had appointed Nicholas Spina to the position of village attorney from 1988 to 1994, in exchange for cash payments from Spina. As a result of the plea, Taddeo was convicted of extortion under the color of official right and making false statements on a federal income tax return, both felony offenses. Taddeo was sentenced to 27 months' imprisonment, fined $40,000, and ordered to repay Spina the $11,000 extorted from him.

In December 1999, Taddeo was notified by the IMRF that, pursuant to section 7—219 of the Code, all of his pension benefits were being terminated as a result of his felony convictions. Section 7—219 of the Code provides:

"None of the benefits provided for in this Article shall

---

Pension Code as "[a] city, village, incorporated town, county, township." 40 ILCS 5/7—105 (West 1998). A participating municipality is a municipality which participates in the Illinois Municipal Retirement Fund. 40 ILCS 5/7—106 (West 1998).

be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as an employee." 40 ILCS 5/7—219 (West 1998).

Subsequently, in March 2002, Taddeo requested an appeal hearing before the Board of Trustees of the Illinois Municipal Retirement Fund (the Board) to contest the termination of his pension benefits. At the hearing, Taddeo conceded that his felony convictions were "related to" and "in connection with" his employment as mayor of Melrose Park and that, pursuant to section 7—219, any IMRF pension benefits he would have received as a result of his service as mayor must be forfeited. He argued, however, that he was entitled to receive that portion of his IMRF pension benefits which he had accrued as township supervisor for Proviso Township because there was no nexus between his service for Proviso Township and his felony convictions.

On December 20, 2002, the Board issued its decision, upholding the staff determination that Taddeo was disqualified from receiving *any* IMRF benefits. The Board, pointing to the language contained in section 7—219, reasoned that, because Taddeo was "an employee" and committed felonies related to his employment with one of his IMRF employers, he was entitled to "*none* of the benefits" provided for under article 7.

Taddeo filed a complaint for administrative review in the circuit court of Cook County. The circuit court set aside the Board's decision and reinstated Taddeo's pension benefits for his employment as township supervisor. On appeal, the appellate court affirmed the decision of the circuit court. 353 Ill. App. 3d 48.

The Board and its members, Louis Kosiba, John L. Novak, Max F. Bochmann, W. Thomas Ross, Martha H. Rademacher, Marvin R. Shoop, R. Steven Sonnemaker, and Sharon U. Thompson, in their official capacities, petitioned this court for leave to appeal, which we granted. 177 Ill. 2d R. 315. We also allowed the Teachers'

Retirement System of the State of Illinois and the State Universities Retirement System of Illinois to submit an *amicus curiae* brief in support of the Board. We also granted Robert L. Grever leave to submit an *amicus curiae* brief in support of Taddeo.

## ANALYSIS

As noted earlier, the facts in the case at bar are uncontested. The matter to be resolved in this appeal is the proper interpretation of the pension forfeiture provision which disqualifies a member of the Illinois Municipal Retirement Fund from receiving pension benefits if convicted of a felony "relating to or arising out of or in connection with his service as an employee." 40 ILCS 5/7—219 (West 1998). The interpretation of this statutory provision is a question of law. See *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 76 (2004). Consequently, we review the Board's interpretation of the relevant Pension Code provision *de novo*. *Shields v. Judges' Retirement System*, 204 Ill. 2d 488, 492 (2003). We acknowledge that the interpretation of a statute by the agency charged with its administration is generally given deference; but it is not binding and, if erroneous, will be rejected. *Shields*, 204 Ill. 2d at 492, citing *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 361 (1988).

Our primary goal when interpreting the language of a statute is to ascertain and give effect to the intent of the legislature. *Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 199 Ill. 2d 414, 424-25 (2002). Legislative intent is best derived from the language of the statute itself, which, if unambiguous, should be enforced as written. *Mattis*, 212 Ill. 2d at 76; *Devoney*, 199 Ill. 2d at 425. If the statutory language is susceptible to more than one interpretation, however, legislative intent may be ascertained by considering "the

entire act, its nature, its object, and the consequences resulting from different constructions." *Shields*, 204 Ill. 2d at 494, citing *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96 (1990). It should be remembered, too, that pension statutes are to be "liberally construed in favor of the rights of the pensioner." *Shields*, 204 Ill. 2d at 494, citing *Matsuda v. Cook County Employees' & Officers' Annuity & Benefit Fund*, 178 Ill. 2d 360, 365-66 (1997).

In the case at bar, the Board argues that the plain language of section 7—219 must be read literally and, when so read, requires us to find that "*none* of the benefits provided for" in article 7 may be paid if the IMRF participant commits "*any* felony relating to or arising out of or in connection with his service as *an employee*." According to the Board, the statutory phrase "as an employee" should be interpreted broadly to mean "as an employee of *any* IMRF employer." Based on this interpretation, the Board claims that section 7—219 unambiguously provides that, if a participant in the IMRF commits a felony related to his employment with *any* participating municipality, the employee shall receive "none of the benefits." We disagree.

In *Devoney*, we interpreted section 5—227 of the Pension Code, one of several "identical" pension disqualification provisions contained in the Code.[2] Section 5—227 governs police officers participating in the Policemen's

---

[2]See *Devoney*, 199 Ill. 2d at 418 ("Identical provisions govern members of the General Assembly (40 ILCS 5/2—156 (West 1998)), participants in the Illinois Municipal Retirement Fund (40 ILCS 5/7—219 (West 1998)), those in the Municipal Employees', Officers', and Officials' Annuity and Benefit Fund (40 ILCS 5/8—251 (West 1998)), county employees (40 ILCS 5/9—235 (West 1998)), employees under the Laborers' and Retirement Board Employees' Annuity and Benefit Fund (40 ILCS 5/11—230 (West 1998)), sanitary district employees (40 ILCS 5/13—807 (West 1998)), state employees (40 ILCS 5/14—149 (West 1998)), judges (40 ILCS

Annuity and Benefit Fund of the City of Chicago and provides:

"None of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service as a policeman." 40 ILCS 5/5—227 (West 1998).

We held that "[w]hen applying the pension disqualification statutes, including section 5—227, the pivotal inquiry is whether a nexus exists between the employee's criminal wrongdoing and the performance of his official duties." *Devoney*, 199 Ill. 2d at 419. The appellate court had found a nexus because Devoney's unlawful activity (a scheme to defraud an insurance company) and his official duties based on the fact that he had violated his sworn duty as a police officer to report crime and arrest persons engaged in criminal conduct. We rejected this rationale and held that "what triggers disqualification is the existence of a connection between the actual felony conviction and the officer's service as a policeman." *Devoney*, 199 Ill. 2d at 419. We subsequently affirmed the Board's decision to disqualify Devoney based on our finding that the nexus requirement was satisfied because Devoney " 'would not have been in a position or selected to participate in the scheme to defraud' " " 'but for the fact that [he] was a Police Officer of high rank.' " *Devoney*, 199 Ill. 2d at 423.

Applying the reasoning of *Devoney* to the case at bar, it is clear that Taddeo is entitled to the IMRF pension he earned for his service as township supervisor. According to *Devoney*, pension benefits are forfeited only if there is a clear and specific connection between the felony committed and the participant's employment. Here, as Taddeo concedes, there is such a nexus between his felony convictions and his position as mayor of Melrose

5/18—163 (West 1998)), and others (see, *e.g.*, 40 ILCS 5/16—199 (West 1998))").

Park. Accordingly, he must forfeit the pension he would have received as an employee of that participating municipality. However, it is undisputed that Taddeo's felony convictions were not related in any way to his employment as township supervisor for Proviso Township. Without such a nexus, there is no basis for disqualifying Taddeo from receiving his township supervisor's pension. See *Cirignani v. Municipal Employees', Officers', & Officials' Annuity & Benefit Fund*, 317 Ill. App. 3d 732 (2000) (widow permitted to receive her deceased husband's pension although she had been disqualified from receiving her own pension because she was a convicted "ghost payroller").

The interpretation of section 7—219 which the Board proposes fails to take into consideration the particular facts of this case. Nothing in the plain language of the statute, which the Board purports to rely on, suggests that the forfeiture requirement was intended to encompass the situation where, as here, the participant's entitlement to an IMRF pension is based on his employment with two separate participating municipalities. The statute simply does not speak to this particular situation. We find, therefore, that the Board's reliance on the plain language of the statute is misplaced.

We recognize that Taddeo received concurrent service credits due to the fact that he was employed, simultaneously, by two IMRF employers. However, as Taddeo points out, concurrent service credit is not a benefit—it is a rule that prohibits "stacking" of service credits for concurrent service. Concurrent service credit does not change the fact that, in essence, Taddeo earned two completely separate pensions—one for his service as township supervisor, and one for his service as mayor. Section 7—203 provides that "[s]eparate reserves shall be maintained for each participating employee in such detail as is necessary to administer all benefits provided

herein, and to segregate accurately the separate liabilities of each participating municipality and its instrumentalities, or of any participating instrumentality, with respect to each participating employee." 40 ILCS 5/7—203 (West 1998). Moreover, section 7—204 provides, in pertinent part, "each participating municipality and its instrumentalities, and each participating instrumentality, shall be treated as an independent unit within the fund." 40 ILCS 5/7—204 (West 1998).

The Board does not claim that the pension Taddeo earned as township supervisor is not severable from the pension he earned as mayor, or that the pension benefits attributable to Taddeo's service as township supervisor cannot be computed separately from the benefits he would have received for his service as mayor. Thus, it appears that the Board is capable of providing Taddeo with the pension he earned as township supervisor and still adhere to the mandates of section 7—219 by providing Taddeo with "*none* of the benefits" derived from his employment which was related to or connected with his felony convictions.

The Board argues that interpreting the pension forfeiture provision found in section 7—219 of the Code in a way that allows Taddeo to receive that part of his pension benefits associated with his employment as township supervisor would encourage malfeasance and, thereby, defeat the purpose of the statute. Again, we must disagree.

In *Devoney*, we held that the common purpose of all pension forfeiture provisions is to " 'discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled.' " *Devoney*, 199 Ill. 2d at 418, quoting *Kerner v. State Employees' Retirement System*, 72 Ill. 2d 507, 513 (1978); see also *Stillo v. State Retirement Systems*, 305 Ill. App. 3d 1003,

1007 (1999) (pension forfeiture provisions "deter felonious conduct in public employment by affecting the pension rights of public employees convicted of a work-related felony"). We believe, like the appellate court below, that this purpose is not negated by allowing the participant to keep that part of his pension untainted by his felony conviction. See 353 Ill. App. 3d at 53. Taddeo's contributions to the IMRF were significantly greater as mayor than his contributions as township supervisor. Consequently, Taddeo has suffered, and will continue to suffer, a significant financial loss due to the forfeiture of his mayoral benefits. He also forfeits the benefit he would have realized from having his two IMRF salaries aggregated or combined for the calculation of his monthly benefits. See 40 ILCS 5/7—116(a) (West 1998).

Finally, as additional support for its interpretation of the statute, the Board cites the decision of the circuit court of the Nineteenth Judicial Circuit in Grever v. Board of Trustees of the Illinois Retirement Fund, No. 03—MR—711 (Cir. Ct. Lake Co. October 8, 2003), wherein the court rejected the reasoning of the circuit court in the case presently before us. However, we decline the Board's invitation to adopt the circuit court's reasoning in Grever. Not only do we find that decision unpersuasive, it is no longer good law. The decision was reversed on appeal in *Grever v. Board of Trustees of the Illinois Municipal Retirement Fund*, 353 Ill. App. 3d 263 (2004), which followed the appellate decision rendered in the case at bar.

CONCLUSION

For all of the reasons stated above, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE FREEMAN, specially concurring:
As mayor of Melrose Park, Taddeo appointed Spina

to the position of village attorney in exchange for cash payments from Spina. The felonies Taddeo thus committed, extortion and making false statements on a federal income tax return, related to his position as mayor of Melrose Park, not his position as supervisor of Proviso Township. As such, the felonies impact only the pension that he earned in his capacity as mayor of Melrose Park. The majority holds that Taddeo is entitled to benefits earned under the pension for his services as township supervisor for Proviso Township, and I agree.

I write separately, however, to distance myself from the references in the majority opinion to *Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 199 Ill. 2d 414 (2002). I dissented in *Devoney* because the majority therein adopted a "but for" standard in determining whether Devoney's conviction of mail fraud related to or arose out of or in connection with Devoney's service as a police officer. Specifically, the majority ruled that forfeiture of the pension benefits was appropriate because Devoney would not have been selected to participate in the criminal scheme "but for" his status as a police officer. See *Devoney*, 199 Ill. 2d at 423. I noted that the majority's "but for" standard could not be reconciled to the plain language of the statute (40 ILCS 5/5—227 (West 1998)). *Devoney*, 199 Ill. 2d at 427 (Freeman, J., dissenting, joined by Kilbride, J.). I also noted that the standard equates an individual's employment status to his service to the state, and requires only a nexus between the individual's conviction and the employment status. The nexus requirement of the statute, that the felony relate to or arise out of or in connection with the individual's service to the state, was rendered superfluous. *Devoney*, 199 Ill. 2d at 428 (Freeman, J., dissenting, joined by Kilbride, J.). Lastly, I noted that the difficulty with the majority's "but for" standard would only increase in magnitude when applied to

prominent participants in the state's pension plan. For such a participant, it could always be said that he was approached to participate in whatever crime at issue because of his position in state government. Thus, employment status would always provide the nexus between the crime and the person's service to the state. *Devoney*, 199 Ill. 2d at 428 (Freeman, J., dissenting, joined by Kilbride, J.).

I continue to believe that the "but for" standard adopted in *Devoney* is problematic. Consequently, I cannot join today's majority in its apparent reliance on *Devoney*.

JUSTICE KILBRIDE joins in this special concurrence.