GEORGE H. RYAN, SR., Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF THE GENERAL ASSEMBLY RETIREMENT SYSTEM *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—07—1601

Opinion filed February 6, 2009.

James R. Thompson, Raymond W. Mitchell, Kyle P. DeJong, and Justin L. Leinenweber, all of Winston & Strawn, LLP, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellees.

JUSTICE McBRIDE delivered the opinion of the court:

Plaintiff, George H. Ryan, Sr., brought this administrative review action following defendant's, the Board of Trustees of the General Assembly Retirement System (the Board), termination of Ryan's pension benefits in accordance with section 2—156 of the Illinois Pension Code (Pension Code) (40 ILCS 5/2—156 (West 2006)). The Board held that Ryan forfeited his pension earned through his service as a member of the General Assembly, Lieutenant Governor, Secretary of State and Governor, following felony convictions based on his conduct during his service to the State. The trial court affirmed the Board's decision on administrative review.

Ryan appeals, arguing that section 2—156 of the Pension Code limits forfeiture to the period of service in such office as is connected

to a felony conviction and partial forfeiture satisfies the rationale underlying the statute.

The parties do not dispute the facts in this case.

In 1966, Ryan was appointed to the Kankakee County Board of Supervisors. Ryan was subsequently elected to and served on the Kankakee Country Board of Supervisors from 1966 to 1972, including a two-year period as chairman. While serving on the Kankakee County Board of Supervisors, Ryan contributed to the Illinois Municipal Retirement Fund (IMRF).

In November 1972, Ryan was elected as a representative to the General Assembly. He was reelected and served until 1982. While in the General Assembly, Ryan was selected as the Minority Leader and Speaker of the House. When Ryan was elected to the General Assembly, he became a member of the General Assembly Retirement System (the System). Ryan requested to transfer his credits earned in the IMRF into the System.

In November 1982, Ryan was elected Lieutenant Governor alongside Governor James R. Thompson. Ryan won reelection in 1986. Subsequently, in 1990, Ryan was elected the Secretary of State and he served two terms in this position. In November 1998, Ryan was elected Governor and served from January 1999 until January 2003.

Ryan continued to participate in the System while serving as Lieutenant Governor, Secretary of State and Governor. In December 2002, Ryan applied for his retirement annuity to begin in January 2003.

In December 2003, a federal grand jury indicted Ryan on felony charges for racketeering, conspiracy, mail fraud, making false statements to the Federal Bureau of Investigation, and income tax violations. These charges were premised on conduct that arose out of and in connection with Ryan's service as Secretary of State and Governor. In April 2006, a jury found Ryan guilty on all counts. The district court dismissed two of the counts after finding insufficient evidence to support the claims and entered judgment on the remaining counts. Ryan was sentenced to 78 months in prison.

Following Ryan's felony convictions, the acting executive secretary of the Illinois State Retirement Systems notified Ryan that all of his pension benefits were being suspended pursuant to section 2—156 of the Pension Code. Section 2—156 provides: "None of the benefits herein provided for shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his or her service as a member." 40 ILCS 5/2—156 (West 2006). Ryan was also informed that this suspension included all of his insurance coverage for him and his wife. The suspension was retroactive to the date of Ryan's sentencing.

Ryan sought review of the suspension of his pension benefits before the Board. Ryan argued that the benefits earned as county board supervisor, member of the General Assembly, and Lieutenant Governor were not subject to forfeiture. The Board disagreed and ratified the acting executive secretary's decision to completely terminate Ryan's retirement annuity. Subsequently, Ryan sought administrative review in the trial court. The trial court affirmed the termination of Ryan's retirement benefits.

This appeal followed.

On appeal, Ryan argues that the plain language of section 2—156 limits forfeiture to those benefits earned through service in the specific office connected to the felony convictions. Ryan does not dispute the termination of his benefits earned while serving as Secretary of State and Governor, but contends that there is no nexus between his service as a member of the General Assembly and Lieutenant Governor and his felony convictions. The Board maintains that all of Ryan's benefits were subject to forfeiture pursuant to section 2—156 in light of his felony convictions arising out of his service to the State of Illinois as a member of the System. Therefore, the question on appeal is whether the pension forfeiture provision disqualifies a member of the General Assembly Retirement System from receiving all of his or her pension benefits if convicted of a felony "relating to or arising out of or in connection with his or her service as a member." 40 ILCS 5/2—156 (West 2006).

When a party appeals the circuit court's decision on a complaint for administrative review, the appellate court's role is to review the administrative decision rather than the circuit court's decision. *Siwek v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 324 Ill. App. 3d 820, 824 (2001). Although a reviewing court may not reverse findings of fact made by an administrative agency unless they are contrary to the manifest weight of the evidence, an issue of statutory construction raises a question of law subject to *de novo* review. *Siwek*, 324 Ill. App. 3d at 824. While the interpretation of a statute by the agency charged with its administration is generally given deference, such deference is not binding and, if erroneous, will be rejected. *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 595 (2005).

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Taddeo*, 216 Ill. 2d at 595. "Legislative intent is best derived from the language of the statute itself, which, if unambiguous, should be enforced as written." *Taddeo*, 216 Ill. 2d at 595. "Under the doctrine of *in pari materia*, two statutes dealing with the same subject will be considered with reference to

each other, 'so that they may be given harmonious effect.' " *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175, 185 (2006), quoting *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002). "This doctrine is also applicable to different sections of the same statute and is consonant with one of our fundamental rules of statutory construction—'to view all of the provisions of a statute as a whole.' " *Collinsville Community*, 218 Ill. 2d at 185-86, quoting *Land*, 202 Ill. 2d at 422. Legislative intent must be ascertained from a consideration of the entire act, its nature, its object, and the consequences resulting from different constructions. *Shields v. Judges' Retirement System*, 204 Ill. 2d 488, 494 (2003). "[A]ll words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation." *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007). "Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous." *Brucker*, 227 Ill. 2d at 514. "In determining the General Assembly's intent, we may properly consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved." *Brucker*, 227 Ill. 2d at 514. The language of pension statutes must also be liberally construed in favor of the rights of the pensioner. *Shields*, 204 Ill. 2d at 494.

The facts of this case raise an issue of first impression. While other felony forfeiture statutes have been interpreted by the courts, none has considered the statutory language present in section 2—156.

Section 2—156 of the Pension Code provides:

> "None of the benefits herein provided for shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his or her service as a member." 40 ILCS 5/2—156 (West 2006).

The term "member" is defined under section 2—105 as follows:

> " 'Member': Members of the General Assembly of this State *** and any person serving as Governor, Lieutenant Governor, Secretary of State, Treasurer, Comptroller, or Attorney General for the period of service in such office." 40 ILCS 5/2—105 (West 2006).

The crux of Ryan's argument hinges on the phrase "period of service in such office" from the Pension Code's definition of "member." In his view, this phrase "expresses a legislative intent to narrow the scope of the term 'Member' and to limit the forfeiture provision to the period of service in such office as is directly related to the felony conviction." Ryan points out that the legislature did not draft section 2—156 in broader terms, such as, "service as an employee" or "service to the State of Illinois." For example, the

forfeiture provisions in both the IMRF and State Employees' Retirement System (SERS) use the phrase, "service as an employee." See 40 ILCS 5/7—219, 14—149 (West 2006).

Our supreme court considered the IMRF felony forfeiture provision in *Taddeo*. In that case, Taddeo served as the township supervisor of Proviso Township while simultaneously serving as mayor of Melrose Park. Later, Taddeo entered into a guilty plea for extortion relating to his position as mayor of Melrose Park. Subsequently, the IMRF notified Taddeo that all of his pension benefits were being terminated as a result of his felony conviction, as dictated by the relevant felony forfeiture statute (40 ILCS 5/7—219 (West 2002)). The Board of Trustees of the IMRF (IMRF Board) upheld the termination, but the circuit court reversed the IMRF Board and reinstated Taddeo's benefits for his employment as township supervisor. This court affirmed the circuit court's decision. *Taddeo*, 216 Ill. 2d at 592-94.

On appeal to the supreme court, the IMRF Board argued that "the plain language of section 7—219 must be read literally and, when so read, requires us to find that 'none of the benefits provided for' in article 7 may be paid if the IMRF participant commits 'any felony relating to or arising out of or in connection with his service as an employee.' " (Emphasis omitted.) *Taddeo*, 216 Ill. 2d at 596. The supreme court disagreed, and relying on *Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 199 Ill. 2d 414 (2002), found that "pension benefits are forfeited only if there is a clear and specific connection between the felony committed and the participant's employment." *Taddeo*, 216 Ill. 2d at 597. Taddeo conceded that there was such a nexus between the felony convictions and his position as mayor of Melrose Park, but it was undisputed that the felony convictions were not related to Taddeo's position as township supervisor. Thus, the court held there was "no basis for disqualifying Taddeo from receiving his township supervisor's pension." *Taddeo*, 216 Ill. 2d at 598.

In rejecting the IMRF Board's interpretation of the felony forfeiture statute, the supreme court stated that "[n]othing in the plain language of the statute, which the [IMRF] Board purports to rely on, suggests that the forfeiture requirement was intended to encompass the situation where, as here, the participant's entitlement to an IMRF pension is based on his employment with two separate participating municipalities." *Taddeo*, 216 Ill. 2d at 598.

The IMRF Board contended that an interpretation allowing Taddeo to retain part of his pension would encourage malfeasance and defeat the statute's purpose. The supreme court disagreed and pointed out that in *Devoney*, it held that "the common purpose of all pension

forfeiture provisions is to ' "discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled." ' " *Taddeo*, 216 Ill. 2d at 599, quoting *Devoney*, 199 Ill. 2d at 418, quoting *Kerner v. State Employees' Retirement System*, 72 Ill. 2d 507, 513 (1978). The *Taddeo* court concluded that "this purpose is not negated by allowing the participant to keep that part of his pension untainted by his felony conviction." *Taddeo*, 216 Ill. 2d at 600.

The Second District in *Grever v. Board of Trustees of the Illinois Municipal Retirement Fund*, 353 Ill. App. 3d 263 (2004), considered the IMRF felony forfeiture provision under similar facts. Grever served as supervisor of Ela Township while also a member of the Lake County Board and a commissioner for the Lake County Forest Preserve District. Grever was convicted of a felony in connection with his performance of his duties as Ela Township supervisor. The IMRF notified Grever that all of his pension benefits were being terminated. The IMRF Board and circuit court upheld the termination. *Grever*, 353 Ill. App. 3d at 264-65.

While the Second District's decision predated the supreme court's ruling in *Taddeo*, the *Grever* court relied on this court's decision in *Taddeo*. See *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 353 Ill. App. 3d 48 (2004), *aff'd*, 216 Ill. 2d 590 (2005). The reviewing court agreed that "there must be a nexus between an employee's wrongdoing and his performance of his official duties in order for the employee's pension to be forfeited. Because that nexus is lacking in regard to plaintiff's employment with the County and with the District, we hold that plaintiff is not disqualified from receiving benefits accruing from his employment with those entities." *Grever*, 353 Ill. App. 3d at 266. The court went on to conclude that its holding was supported by the statute and that the IMRF Board's reading was "overly literal." *Grever*, 353 Ill. App. 3d at 266.

" '[C]ourts must avoid reading statutory language either too literally or too broadly, and must try to garner what the legislature intended.' " *Grever*, 353 Ill. App. 3d at 266, quoting *Village of Lake Villa v. Bransley*, 348 Ill. App. 3d 280, 284 (2004). "A literal interpretation is not controlling where the spirit and intent of the General Assembly in enacting a statute are clearly expressed, its objects and purposes are clearly set forth, and a literal interpretation of a particular clause would defeat the obvious intent [citation]; where literal enforcement of a statute will result in great injustice that was not contemplated by the General Assembly [citation]; or where a literal interpretation would lead to an absurd result." *Grever*, 353 Ill. App. 3d at 266-67. The *Grever* court concluded that forfeiture of pension

benefits from Grever's employment with the Lake County Board and the Lake County Forest Preserve District, which had no connection to his felony conviction, "would not serve the purpose of the forfeiture provision and would defeat the salutary objectives of Article 7 of the [Pension] Code." *Grever*, 353 Ill. App. 3d at 267. The court reasoned that "a literal application of the statute to strip an employee of benefits fairly earned and untainted by malfeasance would amount to a substantial injustice." *Grever*, 353 Ill. App. 3d at 267.

While the question raised in this case differs from prior decisions, we are guided by their construction of pension disqualification statutes. These cases considered the pension disqualification statutes liberally in favor of the pensioner and only found disqualification of the pension when a connection was found between the felony conviction and the pensioner's employment. The supreme court in *Taddeo* concluded that the IMRF felony forfeiture statute should not be read broadly to terminate all pension benefits earned by a member. Rather, there must be a nexus between the felony conviction and the employment. Pension benefits, earned by the member, that were untainted by wrongdoing were not subject to the forfeiture. While the *Taddeo* court considered the fact that Taddeo had earned a pension from two separate municipalities, the focus of the decision was on the connection between Taddeo's felony conviction and his employment in the municipalities. See *Taddeo*, 216 Ill. 2d at 597-98 ("However, it is undisputed that Taddeo's felony convictions were not related in any way to his employment as township supervisor for Proviso Township. Without such a nexus, there is no basis for disqualifying Taddeo from receiving his township supervisor's pension").

The Board relies on the Second District's decision in *Wells v. Board of Trustees of the Illinois Municipal Retirement Fund*, 361 Ill. App. 3d 716 (2005), to support its argument that it is the "identity of the employer" that determines the amount of forfeiture. We are not persuaded. In that case, Wells was employed by the Village of Antioch from 1974 until 2001. Wells was hired as a laborer and later was promoted to be the foreman of the water and sewer department, then the director of the public works department, and finally the village administrator. Following his retirement, Wells entered into a plea agreement for forgery and perjury. As a result of Wells' felony convictions, the Board terminated his pension benefits, which the circuit court affirmed. *Wells*, 361 Ill. App. 3d at 718-19.

On appeal, Wells argued that the appellate decisions in *Taddeo* and *Grever* applied to his case and his pension benefits should only be terminated for his position that gave rise to his wrongdoing. The reviewing court disagreed and pointed out that the felony forfeiture

statute applied to a person's "service as an employee," rather than "related to one's job" or "related to one's position." *Wells*, 361 Ill. App. 3d at 722. The court also noted that the plaintiffs in *Taddeo* and *Grever* were employed by separate municipal employers. *Wells*, 361 Ill. App. 3d at 722.

Even though Ryan, like Wells, was serving only the State of Illinois, section 2—156 does not use the same language as the IMRF felony forfeiture provision and we must consider the language present in this case. The Board focuses on *Wells'* discussion of a singular employer, but that discussion was in regard to the forfeiture statute at issue in that case. The article of the Pension Code relating to the System is not framed around an employer/employee relationship and the Board's reliance on that aspect of the case is misplaced.

Rather than looking at a member's "service as an employee," section 2—156 applies to "service as a member." 40 ILCS 5/2—156 (West 2006). As we previously pointed out, "member" is defined in the statute. "Member" is defined as "Members of the General Assembly of this State *** and any person serving as Governor, Lieutenant Governor, Secretary of State, Treasurer, Comptroller, or Attorney General for the period of service in such office." 40 ILCS 5/2—105 (West 2006). The phrase, "period of service in such office," was drafted in the singular and, thus, limits the scope to a specific office held. "It is the dominion of the legislature to enact laws and it is the province of the courts to construe those laws. We can neither restrict nor enlarge the meaning of an unambiguous statute." *Shields*, 204 Ill. 2d at 497.

When this definition is read alongside section 2—156, we find that the felony conviction "relating to or arising out of or in connection with his or her service as a member" must be linked to the "the period of service in such office." Here, Ryan held several different elected offices in the State of Illinois. Ryan ran for and was elected to each term of office. Ryan held positions in both the legislative and executive branches in the State of Illinois. He served as a member of the General Assembly for five two-year terms and as the Lieutenant Governor for two four-year terms, the Secretary of State for two four-year terms and the Governor for one four-year term. Each of these offices qualifies as a separate period of service and they are easily divisible. Further, Ryan's terms in office were not tied to or related to his other positions. It is undisputed that his felony convictions relate to his service in the offices of Secretary of State and Governor. The Board does not argue that the felony convictions relate to Ryan's service as a member of the General Assembly or Lieutenant Governor. Absent such a connection, we will not disqualify Ryan's pension benefits

earned while serving in those offices. Accordingly, we reverse the circuit court's affirmance of the Board's denial of Ryan's pension earned by his service as a member of the General Assembly and Lieutenant Governor.

Our conclusion follows the public policy behind the felony forfeiture provisions to discourage malfeasance. As the supreme court noted in *Taddeo*, "this purpose is not negated by allowing the participant to keep that part of his pension untainted by his felony conviction." *Taddeo*, 216 Ill. 2d at 600. Ryan will still suffer a financial loss in the termination of the pension benefits he earned while serving as the Secretary of State and Governor. Ryan served the State of Illinois for 30 years and will be losing his pension for 12 of those years, presumably the years he received the highest salary.

Based on the foregoing reasons, we reverse the decision of the circuit court of Cook County and reinstate Ryan's pension benefits earned while a member of the General Assembly and the Lieutenant Governor.

Reversed.

J. GORDON and CAHILL, JJ., concur.