Docket No. 108184.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

GEORGE H. RYAN, SR., Appellee, v. THE BOARD OF TRUSTEES OF THE GENERAL ASSEMBLY RETIREMENT SYSTEM *et al.*, Appellants.

*Opinion filed February 19, 2010.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke dissented, with opinion.

## OPINION

The issue in this case is whether, as a result of his multiple federal felony convictions, former Illinois Governor George H. Ryan, Sr., has forfeited all of the pension benefits he earned from the General Assembly Retirement System. For the reasons that follow, we hold that he has.

## BACKGROUND

The facts of this case are not in dispute. In 1966, Ryan was appointed to the Kankakee County board of supervisors. Ryan was

subsequently elected to and served on the Kankakee County board of supervisors from 1966 to 1972, including a two-year period as chairman. While serving on the Kankakee County board of supervisors, Ryan contributed to the Illinois Municipal Retirement Fund (IMRF).

In November 1972, Ryan was elected as a representative to the General Assembly. He was reelected and served until 1982. While in the General Assembly, Ryan was selected as the minority leader and Speaker of the House. In November 1982, Ryan was elected Lieutenant Governor. Ryan won reelection to that office in 1986. In 1990, Ryan was elected Secretary of State, and he served two terms in this position. In November 1998, Ryan was elected Governor, and he served in that office from January 1999 until January 2003.

When Ryan was first elected to the General Assembly in 1972, he became a member of the General Assembly Retirement System (the System). At that time, Ryan transferred the credits he had earned in the IMRF into the System. Ryan continued to participate in the System while serving as Lieutenant Governor, Secretary of State and Governor. In December 2002, Ryan applied for his retirement annuity, to begin in January 2003.

In December 2003, a federal grand jury indicted Ryan on felony charges for racketeering, conspiracy, mail fraud, making false statements to the Federal Bureau of Investigation, and income tax violations. These charges were premised on conduct that arose out of and was in connection with Ryan's service as Secretary of State and Governor. In April 2006, a jury found Ryan guilty on all counts. The district court dismissed two of the counts after finding insufficient evidence to support the claims and entered judgment on the remaining counts. Ryan was sentenced to 78 months in prison.

Following Ryan's felony convictions, the acting executive secretary of the Illinois State Retirement Systems notified Ryan that all of his pension benefits were being suspended pursuant to section 2–156 of the Illinois Pension Code (the Code) (40 ILCS 5/2–156 (West 2006)). That section provides that "[n]one of the benefits herein provided for shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his or her service as a member." 40 ILCS 5/2–156 (West 2006). Ryan was also informed that the suspension included all of the insurance coverage for

him and his wife. The suspension was made retroactive to the date of Ryan's sentencing.

Ryan sought review of the suspension of his pension benefits before the System's Board of Trustees (the Board). Ryan argued that the benefits he earned as county board supervisor, member of the General Assembly, and Lieutenant Governor were not subject to forfeiture. The Board disagreed and ratified the acting executive secretary's decision to terminate completely Ryan's retirement annuity. Ryan sought administrative review, and the circuit court of Cook County affirmed the complete termination of Ryan's retirement benefits. Ryan appealed, and the appellate court reversed. 388 Ill. App. 3d 161. According to the appellate court, although Ryan clearly had forfeited the pension benefits he earned while serving as Governor and Secretary of State, he is entitled to receive the benefits he earned while serving as Lieutenant Governor and as a member of the General Assembly. 388 Ill. App. 3d at 168-69.

We allowed the Board's petition for leave to appeal. 177 Ill. 2d R. 315(a).

DISCUSSION

As noted earlier, the facts of this case are not in dispute. The matter to be resolved relates solely to the proper interpretation of the pension forfeiture provision that disqualifies a member of the System from receiving pension benefits if convicted of a felony "relating to or arising out of or in connection with his or her service as a member." 40 ILCS 5/2–156 (West 2006). Although the interpretation of a statute by the agency charged with its administration is generally given deference, the interpretation of a statute remains a question of law that we review *de novo*. See *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 595 (2005). Our primary goal when interpreting the language of a statute is to ascertain and give effect to the intent of the legislature. *Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 199 Ill. 2d 414, 424-25 (2002). The plain language of a statute is the best indication of the legislature's intent. *In re Christopher K.*, 217 Ill. 2d 348, 364 (2005). Where the statutory language is clear and unambiguous, we will enforce it as written and will not read into it exceptions,

-3-

conditions, or limitations that the legislature did not express. *In re Christopher K.*, 217 Ill. 2d at 364.

Here, the statutory language is clear and unambiguous. Section 2–156 of the Code provides that "*[n]one of the benefits* herein provided for shall be paid to any person who is convicted of *any felony* relating to or arising out of or in connection with his or her service as a member." (Emphases added.) 40 ILCS 5/2–156 (West 2006). Section 2–105 of the Code, in turn, defines "member" as "Members of the General Assembly of this State *** and any person serving as Governor, Lieutenant Governor, Secretary of State, Treasurer, Comptroller, or Attorney General for the period of service in such office." Thus, under the Code's plain language, any person who is convicted of any felony relating to his or her service as Governor or Secretary of State shall receive *none of the benefits* provided for under the System. Here, there is no dispute that Ryan was convicted of multiple federal felonies relating to his service as both Governor and Secretary of State. Accordingly, section 2–156 plainly mandates that *none of the benefits* provided for under the System shall be paid to Ryan. The forfeiture, in other words, is total. Ryan gets nothing.

This result is consistent not only with the plain language of the governing statutes, but also with this court's most recent pension forfeiture decision. In *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590 (2005), Taddeo was concurrently employed for several years both by Proviso Township as a township supervisor and by the City of Melrose Park as mayor. In 1999, Taddeo was convicted of several felonies relating to his service as mayor of Melrose Park. Following his convictions, the IMRF board concluded that Taddeo had forfeited all of the pension benefits he had earned as a participant in the IMRF–both those relating to his service as mayor of Melrose Park and those relating to his service as a Proviso Township supervisor. *Taddeo*, 216 Ill. 2d at 593-95.

This court disagreed, holding that Taddeo had forfeited only those benefits relating to his employment by Melrose Park. In so holding, the court explained that "pension benefits are forfeited only if there is a clear and specific connection between the felony committed and the participant's employment." *Taddeo*, 216 Ill. 2d at 597. In Taddeo's case, Taddeo's felony convictions related solely to his employment as

mayor of Melrose Park and "were not related in any way to his employment as township supervisor for Proviso Township." *Taddeo*, 216 Ill. 2d at 598. And without such a nexus, there was no basis for disqualifying Taddeo from receiving his township supervisor's pension.

Moreover, under the plain language of the Code, Taddeo had effectively earned two completely separate pensions–one for his service as township supervisor, and one for his service as mayor. In relation to municipal employees such as Taddeo, section 7–203 of the Code provides:

> "Separate reserves shall be maintained for each participating employee in such detail as is necessary to administer all benefits provided herein, and to segregate accurately the separate liabilities of each participating municipality and its instrumentalities, or of any participating instrumentality, with respect to each participating employee." 40 ILCS 5/7–203 (West 2004).

Likewise, section 7–204 of the Code provides that "each participating municipality and its instrumentalities, and each participating instrumentality, shall be treated as an independent unit within the fund." 40 ILCS 5/7–204 (West 2004). In other words, although Proviso Township and Melrose Park both paid into the IMRF, the controlling Code provisions specifically state that they are to be treated as independent units–that is, as separate employers. And notably, the relevant forfeiture provision in that case stated that "[n]one of the benefits provided for in this Article shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his service *as an employee*." (Emphasis added.) 40 ILCS 5/7–219 (West 2004). Thus, the court concluded, if Proviso Township and Melrose Park are separate *employers* for purposes of the Act, then Taddeo's status as an "employee" must be treated separately, as well. *Taddeo*, 216 Ill. 2d at 598. In effect, Taddeo had two different "employers" for purposes of the Act, and only one of those employers suffered a breach of the public trust.

Thus, *Taddeo* stands for the principle that the conviction of a job-related felony results in the forfeiture of all pension benefits earned in service of the public employer whose trust was betrayed. Here, although Ryan held multiple public offices over the course of his time

in the System, all of those offices were in service to a single public employer–the State of Illinois. And it was the State of Illinois whose trust Ryan betrayed when he committed 16 job-related felonies. Under *Taddeo*, then, Ryan should expect to forfeit all of the pension benefits he earned in service to the State of Illinois, which, in fact, is just the outcome that section 2–156 compels.

Finally, we note that this outcome advances the important public policy aims that underlie pension forfeiture statutes such as section 2–156. As this court has explained previously, pension forfeiture statutes were enacted to " 'deter felonious conduct in public employment by affecting the pension rights of public employees convicted of a work-related felony.' " *Devoney*, 199 Ill. 2d at 418, quoting *Stillo v. State Retirement Systems*, 305 Ill. App. 3d 1003, 1007 (1999). Their purpose is to "discourage official malfeasance by denying the public servant convicted of unfaithfulness to his trust the retirement benefits to which he otherwise would have been entitled." *Kerner v. State Employees' Retirement System*, 72 Ill. 2d 507, 513 (1978). Here, the trust to which Ryan was unfaithful was that which he owed to the People of the State of Illinois, who for 30 years placed their confidence in him and whose continuing confidence he repaid by transforming two of this state's highest constitutional offices into an on-going and wholly self-serving criminal enterprise. Allowing Ryan to now collect any portion of his pension would not only run afoul of the plain language of section 2–156, but also would undermine the public policy underlying that statute, which is to ensure that the retirement of a corrupt public servant is never financed by the very constituency whose trust was betrayed.

CONCLUSION

Under section 2–156, under this court's established precedent, and under the basic notions of justice that inform provisions such as section 2–156, George H. Ryan, Sr., has clearly forfeited all of the pension benefits he earned from the General Assembly Retirement System. As the victims of Ryan's crimes, the taxpayers of the State of Illinois are under no obligation to now fund his retirement.

The judgment of the appellate court therefore is reversed, and the judgment of the circuit court is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE BURKE, dissenting:

Today a majority of this court reverses the appellate court judgment and reinstates the decision of the Board of Trustees of the General Assembly Retirement System (Board) to deny former Governor George H. Ryan, Sr., all of the pension benefits he would have received as a result of his contributions to the System as a member of the General Assembly, as Lieutenant Governor, as Secretary of State, and as Governor. I believe, however, that the majority incorrectly construes the forfeiture provision at issue here, section 2–156 of the Illinois Pension Code (40 ILCS 5/2–156 (West 2006)). In so doing, the majority ignores principles of *stare decisis* and implicitly overturns our decision in *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590 (2005). For these reasons, I respectfully must dissent from the majority opinion.

Section 2–156 of the Pension Code provides:

"None of the benefits herein provided for shall be paid to any person who is convicted of any felony relating to or arising out of or in connection with his or her service as a member." 40 ILCS 5/2–156 (West 2006)

The Code also defines the term "member" as:

"Members of the General Assembly of this State including persons who enter military service while a member of the General Assembly and any person serving as Governor, Lieutenant Governor, Secretary of State, Treasurer, Comptroller, or Attorney General for the period of service in such office." 40 ILCS 5/2–105 (West 2006).

Interpreting this forfeiture provision, the majority concludes that section 2–156 is "clear and unambiguous" (slip op. at 4) and

"under the Code's plain language, any person who is convicted of any felony relating to his or her service as

-7-

Governor or Secretary of State shall receive *none of the benefits* provided for under the System. Here, there is no dispute that Ryan was convicted of multiple federal felonies relating to his service as both Governor and Secretary of State. Accordingly, section 2–156 plainly mandates that *none of the benefits* provided for under the System shall be paid to Ryan. The forfeiture, in other words, is total. Ryan gets nothing. " (Emphases in original.) Slip op. at 4.

The majority also finds that "[t]his result is consistent not only with the plain language of the governing statutes, but also with this court's most recent pension forfeiture decision, " *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590 (2005). Slip op. at 4. The majority is incorrect.

In the majority's view, it is irrelevant that the felonies for which Ryan was convicted were related to, arose out of or were in connection with his service as Secretary of State and Governor, but that he was guilty of no wrongdoing while he served in the office of Lieutenant Governor or as a member of the General Assembly. For the majority, all that is required to establish complete forfeiture of *all of the benefits* is that a felony be committed by a person while that person was serving in *any one* position which falls within the definition of "member" under the statute. In *Taddeo,* however, we rejected the identical statutory analysis.

In *Taddeo*, we addressed the forfeiture of pension benefits under section 7–219 of the Illinois Municipal Retirement Fund. This forfeiture provision, which parallels exactly the forfeiture provision at issue here, states:

> "*None of the benefits* provided for in this Article shall be paid to any person who is convicted of *any felony* relating to or arising out of or in connection with his service as an employee." (Emphases added.) 40 ILCS 5/7–219 (West 2002).

In *Taddeo*, the Pension Board argued the plain language of section 7–219 required us to find that "*none* of the benefits provided for" in the relevant article of the Pension Code may be paid if the participant commits "*any* felony relating to or arising out of or in connection with his service as *an employee*" and that "as an employee" should be

-8-

interpreted to mean "as an employee of *any* IMRF employer." (Emphases in original.) *Taddeo*, 216 Ill. 2d at 596. Stated differently, the Board argued that if a participant commits a felony related to only *one* position of employment, he should receive "none of the benefits." This is the same statutory argument that the majority adopts today.

In *Taddeo*, however, we rejected this argument, concluding that the plain language of the statute simply "does not speak" (*Taddeo*, 216 Ill. 2d at 598) to those situations where a person is a participant in a pension fund as a result of more than one position. Having rejected the Board's "plain language" interpretation, we concluded that the statutory language was susceptible to more than one interpretation, so that legislative intent had to be ascertained by considering " 'the entire act, its nature, its object, and the consequences resulting from different constructions.' " *Taddeo*, 216 Ill. 2d at 595-96, quoting *Shields v. Judges' Retirement System*, 204 Ill. 2d 488, 494 (2003), citing *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96 (1990). We also noted that pension statutes are to be "liberally construed in favor of the rights of the pensioner." *Shields*, 204 Ill. 2d at 494, citing *Matsuda v. Cook County Employees' & Officers' Annuity & Benefit Fund*, 178 Ill. 2d 360, 365-66 (1997).

The majority in the case at bar fails to acknowledge that we rejected the Board's plain language argument in *Taddeo* and fails to offer any rationale for why that argument is now controlling. Ignoring the statutory analysis offered in *Taddeo*, the majority instead emphasizes the fact that, in *Taddeo*, the plaintiff had two employers. From this, the majority reasons that "*Taddeo* stands for the principle that the conviction of a job-related felony results in the forfeiture of all pension benefits earned in service of the public employer *whose trust was betrayed*." (Emphasis added.) Slip op. at 6. In this way, the majority reasons, *Taddeo* may be reconciled with its holding. The problem, however, is that this reasoning is not consistent with the majority's own statutory analysis.

As noted above, according to the majority's statutory analysis, a felony conviction plus *one* position which permits a person to be a "member" of the pension fund equals total forfeiture. By that same logic, the result in *Taddeo* should have been different–a felony conviction while Taddeo was an employee of *one* municipality which

permitted him to participate in the pension fund should have meant total forfeiture. This was not the result reached. The majority's reasoning in this case, and the result reached in *Taddeo*, are irreconcilable.

Because we concluded in *Taddeo* that the statutory provision did not cover the situation at hand, we looked to previous precedent, specifically, *Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 199 Ill. 2d 414 (2002). In *Devoney*, we held "[w]hen applying the pension disqualification statutes, including section 5–227, the pivotal inquiry is whether a nexus exists between the employee's criminal wrongdoing and the performance of his official duties." *Devoney*, 199 Ill. 2d at 419. Thus, in *Devoney*, we concluded that without a connection between the wrongdoing and the performance of official duties, there could be no loss of benefits.

In *Taddeo*, we applied this rationale and concluded that Taddeo's pension benefits could be forfeited only if there was a clear and specific connection between the felony he committed and his employment. *Taddeo*, 216 Ill. 2d at 597. Thus, in *Taddeo*, we found that, because there was a connection between the felony and Taddeo's position as mayor, but no such connection between the felony and his position as township supervisor, there was no basis to disqualify Taddeo's supervisor pension. *Taddeo*, 216 Ill. 2d at 598.

The nexus analysis was at the core of our decision in *Taddeo*. Applying that analysis to the facts of the case at bar, I would conclude there is a connection between the felonies and Ryan's position as Governor and Secretary of State. But, as in *Taddeo*, there is no such connection between the felonies and Ryan's position in the General Assembly or as Lieutenant Governor. Thus, under *Taddeo*, without such nexus, there is no basis to disqualify Ryan from receiving those benefits related to these positions.

I note that, in support of our conclusion in *Taddeo*, we found that Taddeo earned two completely separate pensions, one from each independent employer, which were severable. Thus, the Board was able to give Taddeo the pension he earned as a supervisor yet "still adhere to the mandates of section 7–219 by providing Taddeo with 'none of the benefits' derived from his employment which was related to or connected with his felony convictions." (Emphasis omitted.) *Taddeo*, 216 Ill. 2d at 599. The same is true here. A "member" is only

-10-

a member "for the period of service in such office." 40 ILCS 5/2–105 (West 2006). This language indicates that each "membership" is distinct. Thus, as in *Taddeo*, Ryan can retain his pension benefits derived from his position in the General Assembly and as Lieutenant Governor, yet we can still adhere to the mandates of section 2–156 by providing Ryan with "[n]one of the benefits" derived from his membership in the fund as a result of his position as Secretary of State and as Governor–those positions which were connected with his felony convictions.

By my analysis, as set forth above, I do not intend to diminish in any way the seriousness of the criminal acts committed by the former Governor. Also, I understand the very human impulse to want to punish Ryan for his wrongdoings by depriving him of all of his pension benefits. However, while I sympathize with such impulses, our constitutional obligation is to follow the law, not our personal preferences. *Taddeo* clearly mandates that Ryan receive the pension benefits associated with his time in the General Assembly and as Lieutenant Governor. Despite this, the majority reaches a contrary conclusion and implicitly overrules *Taddeo*. This necessarily implicates *stare decisis* and the majority has not explained what good cause or compelling reasons dictate that we disregard our analysis in *Taddeo*.

Because the majority opinion is the result of an unjustified departure from precedent, I cannot join it. Accordingly, I respectfully dissent.