NOTICE

Decision filed 10/03/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0599

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| MADISON MUTUAL INSURANCE COMPANY, | ) Appeal from the<br>) Circuit Court of<br>) St. Clair County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 05-MR-110 |
| | ) |
| JERRY KESSLER, d/b/a Kessler Auto Body, GERRELL WYNN, and SARAH GALLE, | )<br>)<br>) Honorable<br>) Andrew J. Gleeson, |
| Defendants-Appellees. | ) Judge, presiding. |

_____

JUSTICE SPOMER delivered the opinion of the court:

The plaintiff, Madison Mutual Insurance Company (Madison Mutual), appeals the November 1, 2006, order of the circuit court of St. Clair County that granted the cross-motion for a summary judgment filed by the defendant Jerry Kessler, doing business as Kessler Auto Body (Kessler), and denied Madison Mutual's motion for a summary judgment. The sole issue on appeal is whether the circuit court erred in its finding that, under section 5-102 of the Illinois Vehicle Code (625 ILCS 5/5-102 (West 2004)), the Madison Mutual insurance policy provided primary coverage on an Escort owned by Kessler which was involved in an accident while being driven by Sarah Galle. For the reasons set forth below, we reverse the order of the circuit court and remand with directions that the circuit court enter an order granting a summary judgment in favor of Madison Mutual.

The facts necessary for our disposition of this appeal are as follows. On August 4, 2005, Madison Mutual filed an amended complaint for a declaratory judgment in the circuit court of St. Clair County. According to the amended complaint, Madison Mutual issued a

1

policy of automobile insurance to Dennis Galle, who is the father of Sarah Galle (Sarah), a named defendant in the action. On or about May 26, 2004, Sarah was operating a Ford Escort owned by Kessler when she was involved in an accident. The complaint for a declaratory judgment requested the circuit court to determine whether Kessler's policy, which had been issued by Auto-Owners Insurance Company, or Sarah's father's policy, which had been issued by Madison Mutual, would provide primary coverage for the accident.

On August 1, 2006, Madison Mutual filed a motion for a summary judgment. According to Madison Mutual's motion for a summary judgment, there was no genuine issue of material fact and, as a matter of law, primary coverage for the May 26, 2004, accident involving the Escort was to be provided by Kessler's insurance policy. "Exhibit A" to the motion was the transcript of Sarah's deposition, which was taken on June 8, 2006. Sarah verified that she was in an automobile accident on May 26, 2004, while driving a Ford Escort owned by Kessler, who is a used-vehicle dealer. Sarah testified that, approximately a month prior to the May 26, 2004, accident, she had rear-ended another car while driving a 2000 Saturn that her father owned. Her father had purchased the Saturn from Kessler about six months prior to that accident. The Saturn was insured by Madison Mutual. The Saturn was towed from the scene, and Madison Mutual later declared it to be a total loss. Sarah testified that Kessler gave her the Escort to drive shortly after the accident while he searched for a replacement vehicle for Sarah's father to purchase. After the May 26, 2004, accident with the Escort, Sarah returned the Escort to Kessler.

Sarah further testified that her family had previously owned the Escort that Kessler gave her to drive following the accident with the Saturn. She drove it for about two years, and then her father traded it to Kessler for the Saturn. They were not considering repurchasing the Escort from Kessler. She was not evaluating the reliability or the condition of the Escort at the time she was driving it. At the time of the accident in the Escort, the

2

Saturn was not in the process of being repaired or being evaluated by a dealer or anyone else for repair.

The transcript of Kessler's deposition, taken on July 24, 2006, was also attached to Madison Mutual's motion for a summary judgment, as "Exhibit B." Kessler testified that his business, Kessler Auto Body & Sales, repairs and sells used automobiles. Sarah's father had been Kessler's customer for at least eight years prior to Sarah's accident with the Saturn. Sarah's father purchased the Saturn from Kessler and traded in the Ford Escort Sarah was driving at the time of the May 26, 2004, accident. After Sarah's accident with the Saturn, Kessler viewed the Saturn. It was apparent to him at that time that the Saturn was a total loss. Kessler spoke with Sarah and her father and determined that they would wait to hear from the insurance company before doing anything with the Saturn. One or two days after Sarah's accident with the Saturn, Kessler let Sarah use the Escort she had previously traded in for the Saturn, as a loaner until they either repaired or replaced the Saturn.

Kessler testified that Madison Mutual declared the Saturn a total loss about five or six days after the accident with the Saturn. At that point, Kessler began searching auto auctions for another Saturn for Sarah and her father to purchase. The plan was that Sarah would return the Escort to Kessler when she picked up her new Saturn. Sarah was in the accident with the Escort on May 26, 2004. Kessler had insurance on the Escort through Auto-Owners Insurance Company. Sarah never considered purchasing or leasing the Escort from Kessler, and she was not evaluating the performance or reliability of the Escort. Kessler never considered repairing the Saturn.

Kessler's garage liability insurance policy was attached to Madison Mutual's motion for a summary judgment as "Exhibit E." That policy, which was issued by Auto-Owners Insurance Company, provided combined liability coverage of $1 million per accident for all vehicles owned by Kessler. Sarah's father's insurance policy, which was issued by Madison

3

Mutual, was attached to Madison Mutual's motion for a summary judgment as "Exhibit F." That insurance policy provided liability coverage for the Saturn as of the date of Sarah's accident with the Escort, in the amount of $100,000 per person, $300,000 per accident, and $100,000 for property damage.

On September 25, 2006, Madison Mutual filed a supplemental affidavit in support of its motion for a summary judgment. According to the sworn testimony of Angie Cole, a casualty claims representative for Madison Mutual, she spoke to Sarah on May 4, 2004, and advised her that Madison Mutual had declared the Saturn a total loss. In that conversation, Cole advised Sarah that Madison Mutual had evaluated the value of the Saturn at $7,100. On May 7, 2004, Cole spoke with Sarah's father and discussed the evaluation of the Saturn. Sarah's father agreed to accept Madison Mutual's offer of $7,100 less the $500 deductible. On May 10, 2004, Madison Mutual received the title to the Saturn, which had been signed by Sarah's father. However, Madison Mutual discovered that the title was listed in both Sarah's father's and Sarah's mother's names. Accordingly, Madison Mutual returned the title to Sarah's parents so that Sarah's mother could sign the title. On May 12, 2004, Madison Mutual issued a check to Sarah's father and mother in the amount of $6,600. By May 17, 2004, Madison Mutual had received the title to the Saturn, signed by both Sarah's father and Sarah's mother.

On September 26, 2006, Auto-Owners Insurance Company and Kessler filed a cross-motion for a summary judgment. According to the cross-motion for a summary judgment, there was no genuine issue of material fact and, as a matter of law, Sarah's father's Madison Mutual policy would provide primary coverage for the May 26, 2004, accident with the Escort.

On September 27, 2006, a hearing was held on the motion and cross-motion for a summary judgment. The circuit court issued an order taking the motion and cross-motion

4

under advisement and ordering the parties to submit proposed orders within 14 days. On November 1, 2006, the circuit court issued an order granting the cross-motion for a summary judgment filed by Auto-Owners Insurance Company and Kessler, which declared Madison Mutual liable to provide primary coverage for the May 26, 2004, accident involving the Escort, and denying the motion for a summary judgment filed by Madison Mutual. In its order, the circuit court found that under the terms of section 5-102 of the Illinois Vehicle Code (625 ILCS 5/5-102 (West 2004)), Madison Mutual's insurance policy would provide primary coverage. On November 9, 2006, Madison Mutual filed a timely notice of appeal.

We begin our analysis with the standard of review. "We review *de novo* the trial court's grant of summary judgment." *Reppert v. Southern Illinois University*, No. 4-06-1014, slip op. at 4 (August 15, 2007). "Summary judgment is proper if, 'when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Reppert*, slip op. at 3-4 (quoting *Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d 653, 661 (2005)). In addition, the resolution of the issue on appeal requires the interpretation of section 5-102 of the Illinois Vehicle Code. We review issues of statutory interpretation *de novo*. *Reppert*, slip op. at 4.

Section 5-102 of the Illinois Vehicle Code sets forth the licensing requirements for used-vehicle dealers. One of the requirements is that a used-vehicle dealer "provide liability coverage in the minimum amounts of $100,000 for bodily injury to, or death of, any person, $300,000 for bodily injury to, or death of, two or more persons in any one accident, and $50,000 for damage to property." 625 ILCS 5/5-102(b)(4) (West 2004). Effective June 1, 2003, the following relevant language was added to section 5-102(b)(4) of the Illinois Vehicle Code:

"If the permitted user has a liability insurance policy that provides automobile

5

liability insurance coverage of at least $100,000 for bodily injury to or the death of any person, $300,000 for bodily injury to or the death of any 2 or more persons in any one accident, and $50,000 for damage to property, then the permitted user's insurer shall be the primary insurer and the dealer's insurer shall be the secondary insurer. If the permitted user does not have a liability insurance policy that provides automobile liability insurance coverage of at least $100,000 for bodily injury to or the death of any person, $300,000 for bodily injury to or the death of any 2 or more persons in any one accident, and $50,000 for damage to property, or does not have any insurance at all, then the dealer's insurer shall be the primary insurer and the permitted user's insurer shall be the secondary insurer.

When a permitted user is 'test driving' a used[-]vehicle dealer's automobile, the used[-]vehicle dealer's insurance shall be primary and the permitted user's insurance shall be secondary.

As used in this paragraph 4, a 'permitted user' is a person who, with the permission of the used[-]vehicle dealer or an employee of the used[-]vehicle dealer, drives a vehicle owned and held for sale or lease by the used[-]vehicle dealer which the person is considering to purchase or lease, in order to evaluate the performance, reliability, or condition of the vehicle. The term 'permitted user' also includes a person who, with the permission of the used[-]vehicle dealer, drives a vehicle owned or held for sale or lease by the used[-]vehicle dealer for loaner purposes while the user's vehicle is being repaired or evaluated.

As used in this paragraph 4, 'test driving' occurs when a permitted user who, with the permission of the used[-]vehicle dealer or an employee of the used[-]vehicle dealer, drives a vehicle owned and held for sale or lease by a used[-]vehicle dealer that the person is considering to purchase or lease, in order to evaluate the

6

performance, reliability, or condition of the vehicle.

As used in this paragraph 4, 'loaner purposes' means when a person who, with the permission of the used[-]vehicle dealer, drives a vehicle owned or held for sale or lease by the used[-]vehicle dealer while the user's vehicle is being repaired or evaluated." 625 ILCS 5/5-102(b)(4) (West 2004).

Subsection (b)(4) of section 5-102 of the Illinois Vehicle Code is confusing as written. The statute begins by stating that a dealer's policy will provide primary coverage on the dealer's automobiles unless a "permitted user" of one of the dealer's automobiles has the requisite amount of coverage. The statute then defines a "permitted user" as one who is "test driving" the used-vehicle dealer's vehicle or who is driving the used-vehicle dealer's vehicle for "loaner purposes" while the user's vehicle is being repaired or evaluated. The statute states that the used-vehicle dealer's policy will be primary if the "permitted user" is "test driving." Accordingly, there is only one situation under the statute where the insurance policy of a "permitted user" would be primary. That is where the "permitted user" has the requisite coverage and is driving a vehicle held out for sale or lease by the used-vehicle dealer, with the used-vehicle dealer's permission, for "loaner purposes," while the user's vehicle is being repaired or evaluated.

Here, it is undisputed that Sarah had the requisite amount of coverage, that Sarah was driving the Escort with the permission of Kessler, and that the Escort was owned and held for sale or lease by Kessler. There is no question that Sarah was not "test driving" the Escort, as both Sarah and Kessler testified that Sarah had previously owned the Escort and had no intention of repurchasing that vehicle. Accordingly, under the terms of the statute, Sarah's insurance coverage would be primary only if she was driving Kessler's vehicle while her Saturn was being repaired or evaluated.

The circuit court, in granting the cross-motion for a summary judgment filed by Auto-

Owners Insurance Company and Kessler, found that, at the time of the May 26, 2004, accident involving the Escort, Sarah's Saturn was being "evaluated" under the terms of the statute. The circuit court concluded that the term *evaluated* in the statute "should be read broadly to include the evaluation of how to replace a vehicle that has been determined to be totaled." In so concluding, the circuit court primarily relied on a regulation promulgated by the Department of Financial and Professional Regulation regarding required claims practices for private passenger automobile insurance companies. 50 Ill. Adm. Code §919.80 (eff. July 22, 2002). That regulation sets forth, *inter alia*, a procedure insurance companies must follow when settling a total-loss vehicle claim. 50 Ill. Adm. Code §919.80(c) (eff. July 22, 2002). Subsection (c)(2)(F) provides, "If within 30 days after the receipt of the claim draft, the insured cannot purchase a comparable vehicle in excess of such market value, the company will reopen its claim file ***." 50 Ill. Adm. Code §919.80(c)(2)(F) (eff. July 22, 2002). The regulation then sets forth a right-of-recourse procedure to be followed in this situation. Relying on this regulation, the circuit court found, "[T]he evaluation of a vehicle and its replacement does not end for purposes of the statute at the time the damaged vehicle is determined to be a total loss by the owner or the insurer."

Prior to the amendment of section 5-102 of the Illinois Vehicle Code, the common law provided that primary automobile liability coverage is placed on the insurer of the owner of an automobile, rather than on the insurer of the operator. *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240, 246 (1998). Section 5-102 of the Illinois Vehicle Code is a departure from the common law to the extent it requires the operator's insurance to be primary, rather than the owner's insurance. In Illinois, the rule is that "statutes in derogation of the common law are to be strictly construed in favor of persons sought to be subjected to their operation. Our courts will read nothing into such statutes by intendment or implication." *In re W.W.*, 97 Ill. 2d 53, 57 (1983) (citing *Barthel v. Illinois*

8

*Central Gulf R.R. Co.*, 74 Ill. 2d 213, 220 (1978)). "Moreover, such statutes will not be extended any further than what the language of the statute absolutely requires by its express terms or by clear implication." *In re W.W.*, 97 Ill. 2d at 57 (citing *Walter v. Northern Insurance Co. of New York*, 370 Ill. 283, 288-89 (1938)).

"The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Lulay v. Lulay*, 193 Ill. 2d 455, 466 (2000) (citing *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997)). "The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning." *Lulay*, 193 Ill. 2d at 466 (citing *Paris*, 179 Ill. 2d at 177). When determining the plain and ordinary meaning of words, a court may look to the dictionary. *In re Application of the County Treasurer of Cook County*, 343 Ill. App. 3d 122, 125 (2003). The word *evaluate* as defined by Merriam-Webster Online Dictionary is "1: to determine or fix the value of[;] 2: to determine the significance, worth, or condition of usually by careful appraisal and study." Merriam-Webster Online Dictionary, at http://www.m-w.com/dictionary/evaluate. There is nothing in the statute to suggest that we should depart from the ordinary definition of *evaluated* and use a specialized understanding of the term.

Furthermore, a "statute should be evaluated as a whole, with each provision construed in connection with every other section." *Paris*, 179 Ill. 2d at 177 (citing *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 91 (1992)). Earlier in section 5-102(b)(4), *test driving* is defined as "driv[ing] a vehicle owned and held for sale or lease by a used[-]vehicle dealer that the person is considering to purchase or lease, in order to *evaluate* the performance, reliability, or condition of the vehicle." (Emphasis added.) 625 ILCS 5/5-102(b)(4) (West 2004). It is clear that the legislature was well aware of the plain and ordinary meaning of the term *evaluate* based on its previous usage within subsection (b)(4). Absent any indication that the legislature intended *evaluated* to have two different

9

meanings within the statute, it should be given a consistent and plain meaning.

We also find it instructive that the statute defines a "permitted user" as a person driving the used-vehicle dealer's vehicle while the user's vehicle is being "repaired or evaluated." The use of the term *evaluated* in the same phrase as the word *repaired* seems to define a situation when a vehicle is being evaluated for repair. As is the case with Kessler's business, many used-vehicle dealers have a repair business that is operated in conjunction with the sale of vehicles. It is a more ordinary occurrence than the situation in the case at bar for the dealership to give a customer a loaner vehicle while the dealership is repairing the customer's vehicle or is evaluating the customer's vehicle in the sense of determining whether the customer's vehicle is in need of repair or the cost of repairs. Because section 5-102 of the Illinois Vehicle Code defines the relationship between a used-vehicle dealer and a customer, it seems more likely that the intent of the legislature was to define a situation where the used-vehicle dealer is repairing or evaluating the customer's vehicle, rather than to define a situation where any, unnamed third party is doing the repairing or evaluating.

Moreover, we find the circuit court's reliance on section 919.80 of Title 50 of the Illinois Administrative Code (50 Ill. Adm. Code §919.80 (eff. July 22, 2002)) to define the term *evaluated* in the statute at issue to be misplaced. There is nothing in the statute to indicate that the term *evaluated* should be defined by a procedure set forth in an unrelated regulation governing insurance claims practices. Had the legislature intended the "permitted user's" insurance to provide primary coverage while the user's vehicle is being replaced, it could have simply stated, "while the user's vehicle is being repaired, replaced, or evaluated." Furthermore, if the legislature wanted to depart from the plain meaning of the term *evaluated* to encompass the ongoing insurance claim procedure that was taking place between the Galles and Madison Mutual under administrative regulations promulgated by the Illinois

10

Department of Insurance, it could have easily included a reference to the regulation setting forth that procedure or at least used the term *claim* in conjunction with the term *evaluate*.

The circuit court essentially construed section 919.80 of Title 50 of the Illinois Administrative Code and section 5-102 of the Illinois Vehicle Code *in pari materia*. This principle of construction requires two legislative acts that address the same subject to be considered with reference to each other, so that they may be given harmonious effect. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002). The problem with the circuit court's *in pari materia* analysis, however, is that the regulation that requires an insurance company to reopen its claim file if a replacement for a total-loss vehicle cannot be found within 30 days does not address the same subject as section 5-102 of the Illinois Vehicle Code. In contrast, section 5-102 defines the insurance requirements for a used-vehicle dealer and defines one situation in which the dealer's insurance would provide excess coverage when there is an accident involving a vehicle owned by the dealer. The two enactments are not related whatsoever. In addition, a court should only invoke the doctrine of *in pari materia* to resolve a statutory ambiguity. *People v. Aleman*, 355 Ill. App. 3d 619, 626 (2005). As explained above, no such ambiguity exists in the statute at issue.

Applying the foregoing interpretation of section 5-102 to the facts of the case at bar, we conclude that at the time of Sarah's May 26, 2004, accident with the Escort, no one was in the process of determining the significance, worth, or condition of Sarah's Saturn. It was not being evaluated to see whether it could be repaired, and it had already been determined that the Saturn was not going to be repaired. Sarah was driving the Escort with Kessler's permission so that Kessler could find her a replacement vehicle. This situation is outside the purview of how the plain language of section 5-102 of the Illinois Vehicle Code defines *permitted user*, which should be strictly construed because that definition results in an abrogation of the common law rule that the vehicle owner's insurance coverage shall be

11

primary.

For the forgoing reasons, we find the circuit court erred in granting the cross-motion for a summary judgment filed by Auto-Owners Insurance Company and Kessler and in denying the motion for a summary judgment filed by Madison Mutual. Accordingly, we reverse and remand with directions for the circuit court to enter an order granting a summary judgment in favor of Madison Mutual.

Reversed and remanded with directions.

STEWART and WEXSTTEN, JJ., concur.

NO. 5-06-0599

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| MADISON MUTUAL INSURANCE COMPANY, | ) Appeal from the<br>) Circuit Court of<br>) St. Clair County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 05-MR-110 |
| | ) |
| JERRY KESSLER, d/b/a Kessler Auto Body, GERRELL WYNN, and SARAH GALLE, | )<br>) Honorable |
| | ) Andrew J. Gleeson, |
| Defendants-Appellees. | ) Judge, presiding. |

**Opinion Filed**: October 3, 2007

---

**Justices**: Honorable Stephen L. Spomer, J.

Honorable Bruce D. Stewart, J., and
Honorable James M. Wexstten, J.,
Concur

---

**Attorney for Appellant**

Paul P. Waller, III, Dale L. Bode, Walker & Williams, P.C., 4343 West Main Street, Belleville, IL 62226

---

**Attorneys for Appellees**

Daniel R. Price, Wham & Wham, 212 East Broadway, P.O. Box 549, Centralia, IL 62801 (attorney for Jerry Kessler); Phoebe S. Bowers, Samuels, Miller, Schroeder, Jackson & Sly, LLP, 225 North Water Street, Suite 301, P.O. Box 1400, Decatur, IL 62525 (attorney for Gerrell Wynn; no brief filed); Kevin J. Babb, Unsell, Schattnik & Babb, 309 Hillsboro Avenue, Edwardsville, IL 62025 (attorney for Sarah Galle; no brief filed)