DAVIS BANCORP, INCORPORATED, Plaintiff-Appellant, v. THE BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.—DAVIS BANCORP, INCORPORATED, Plaintiff-Appellant, v. THE BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees.

First District (6th Division)   Nos. 1—07—1902, 1—07—2029 cons.

Opinion filed June 30, 2009.—Rehearing denied July 28, 2009.

136

Gary L. Smith, of Loewenstein, Hagan & Smith, P.C., of Springfield, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for appellees.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Davis Bancorp, appeals the decision of the Illinois Department of Employment Security Board of Review (the Board) finding that its driver, Daniel Calambas, was "in employment" with plaintiff and he was not exempt from unemployment coverage under section 212.1 of the Unemployment Insurance Act (the Act) (820 ILCS 405/ 212.1 (West 2006)).[1] The circuit court affirmed the decision of the Board and plaintiff appeals arguing that: (1) the Board erred in finding that Calambas' 1997 Toyota Corolla was not a truck as defined by section 212.1 of the Act; (2) Calambas maintained a separate business identity under section 212.1(a)(6) of the Act; and (3) plaintiff did not set Calambas' schedule, the shipper-banks set the deadlines and, thus, section 212.1(a)(3) if the Act was satisfied. For the reasons that follow, we affirm the judgment of the circuit court.

---

[1]Case numbers 1—07—1902 and 1—07—2029 were assigned to the sixth division of this court for contemporaneous disposition. The facts and testimony in both cases are identical on the dispositive issue except that in No. 1—07—2029, Garcia drove a 2000 Toyota Corolla and worked a total of 14 years for plaintiff. Accordingly, we consolidated Nos. 1—07—1902 and 1—07—2029 by separate order and we will refer to the facts of No. 1—07—1902 in the background section of this opinion.

## BACKGROUND

Plaintiff is a licensed motor carrier under a certificate of authority with the Illinois Commerce Commission. Part of plaintiff's business is transporting checks from banks to the Federal Reserve for processing under very strict deadlines. Calambas was a driver who delivered checks for plaintiff from June 1992 until October 2004. During the time that Calambas worked as a driver for plaintiff, he owned and maintained his own vehicle, paid all the costs for licensing, received bimonthly paychecks without any withholdings and received a "1099 tax form" at the end of each year. In October 2004, plaintiff terminated Calambas, who subsequently applied for unemployment insurance benefits. Both parties submitted questionnaires to the Illinois Department of Employment Security regarding Calambas' claim for benefits, and an initial ruling in plaintiff's favor was entered finding that Calambas was the operator of a "truck" pursuant to section 212.1 of the Act and his compensation did not constitute wages for purposes of benefit credit. Calambas appealed the ruling and a telephone hearing was scheduled for December 21, 2004.

Calambas testified that he had been a driver for plaintiff for 12 or 13 years, and worked 6 days per week, transporting bags of checks at the time he was terminated. Calambas began his day around 6 a.m. and worked until 8 or 8:15 p.m. Monday through Friday; however, he only worked two to three hours on Saturdays. When Calambas first started working for plaintiff, he was trained for one or two days and sent out on his own to make deliveries. When new banks were added to the route, he would attend training meetings at plaintiff's location on Sundays to learn the details.

Calambas testified that he was given a uniform bearing plaintiff's name and emblem when he was hired. During his last year of work, he testified that he was given a shirt and jacket that merely had the initials JRD on them. According to Calambas, drivers were required to wear a uniform or be fined $25. Each driver was furnished with a locker at plaintiff's location with a route number on it through which messages were relayed from management to the drivers. Plaintiff also provided the drivers with receipts bearing plaintiff's emblem and name which were filled out by the banks sending and receiving deliveries. From time to time, he was required to attend meetings at plaintiff's place of business on Sundays for which no compensation was given. Calambas testified that he would be suspended or not given a route if he did not attend the meetings. He generally drove the same route everyday, and if a change occurred, plaintiff's secretary would call and advise him of the change. Similarly, if Calambas was delayed, he was required to call in to plaintiff's secretary and advise her of his status.

Calambas testified that he used his own vehicle and had it licensed as a passenger vehicle with the appropriate government agencies. He was given signs by plaintiff to put on his car while making deliveries so that he would not be ticketed or towed. Calambas also testified that plaintiff furnished him with a beeper; however, he was required to use his own mobile phone and was not reimbursed for those expenses. When asked if he obtained an Illinois Commerce Commission Transportation Division Public Carrier Certificate, Calambas responded that plaintiff obtained those documents, gave them to him and took the same from him when he was terminated. Plaintiff also obtained a federal employer's identification number (FEIN) for Calambas.

Payment to Calambas was made by check every two weeks and sent by mail. No taxes were withheld from his checks and he paid any taxes due directly to the taxing authority. There was no vacation time, and if he wanted to take any time off, he was required to get approval from plaintiff and find a replacement for his route, which he did from time to time.

J.R. Davis, president and secretary for plaintiff Davis Bancorp, testified on plaintiff's behalf at the hearing. Davis stated that plaintiff is a transporter of currency and checks. About 70% of the business consists of transporting cash and 30% is transporting checks. He testified that the drivers, including Calambas, did not have a supervisor, but rather, a contact person who would coordinate collections according to the banks' needs. The drivers begin their day at the Chicago clearinghouse where large banks deliver checks that are sorted and sent to smaller banks. The banks set the delivery times for these checks and, based on timely delivery, earn interest on the funds. From time to time, delivery schedules would change based on factors such as the closing or opening of banks. Under these circumstances, the delivery deadlines would be changed by the banks and plaintiff would convey the information to the drivers or show them the new location.

Davis testified that drivers were not currently required to wear uniforms, but that all drivers were required to "look business like." Plaintiff had distributed uniforms years ago, but stopped that practice because the check delivery drivers looked too much like the currency delivery drivers. Plaintiff did not, however, instruct the check delivery drivers that they were no longer required to wear the uniforms.

Sometime in 2001 or 2002, plaintiff decided that it would avail itself of the exemption from unemployment compensation under section 212.1 of the Act. Plaintiff entered into a lease agreement with Calambas and all of its check delivery drivers under which the drivers agreed to lease their vehicles and provide driving services to plaintiff.

Davis testified that plaintiff's law firm drafted the contracts following a change in the law. The drivers were able to terminate the contract with reasonable notice and could also offer their services to others. The contract required Calambas to display his name and address on the vehicle, and Davis stated that Calambas never indicated that he failed to comply with this provision. Davis did not inspect the drivers' vehicles, but had he learned that Calambas was not compliant, he would have terminated his contract.

Relative to plaintiff's facilities and equipment, Davis testified that plaintiff did not provide lockers, but it had collection bins located at the Chicago clearinghouse which contained deposits awaiting delivery. He admitted that plaintiff maintained a supply of beepers and that drivers were required to use their own mobile phones while driving. Davis stated drivers were required to find replacements if they wanted to go on vacation and that Calambas had a replacement drive for him while he went on vacation for a month. With regard to the Sunday meetings, Davis said that if a new shipper or existing customer had additions or changes to the route, Sunday meetings would be held to communicate the information to the drivers. None of these meetings had been held since December 2, 2002, which was before the contract had been executed between Calambas and plaintiff. Finally, Davis testified that no taxes were withheld from Calambas' paychecks and he was issued a 1099 form which referenced an FEIN that Calambas, rather than plaintiff, provided.

On December 30, 2004, the hearing referee issued a decision finding that Calambas was "in employment" with plaintiff and he was not exempt from coverage because: (1) the 1997 Toyota Corolla was not a "truck" for purposes of section 212.1 of the Act; (2) plaintiff failed to show that Calambas paid all costs for licensing and operating the vehicle under section 212.1(a)(5); and (3) plaintiff failed to show that Calambas maintained a separate business identity under section 212.1(a)(6) of the Act. Although an exemption under section 212 of the Act was not raised by plaintiff, the referee analyzed the case under section 212 and determined that plaintiff did not meet the criteria for a general exemption. The referee held that Calambas met the definition of employment in section 206 of the Act, plaintiff was his employer under section 205 of the Act, plaintiff maintained an employing unit under section 204 of the Act and Calambas was not exempt from coverage under section 212.1 or 212 of the Act.

Plaintiff appealed the decision of the referee to the Board, claiming: (1) Calambas was guilty of misconduct under section 602(A) of the Act for failure to follow the terms of the contract; (2) Calambas' 1997 Corolla was a "truck" as defined by the Department; (3) Calam-

bas paid all costs of operating and licensing his vehicle; and (4) Calambas maintained a separate business identity. The Board found that plaintiff waived his claim that Calambas was guilty of misconduct under section 602(A) because it did not properly raise the issue in the initial protest to the claim. After adopting the referee's finding of fact, the Board held that Calambas' 1997 Toyota Corolla was not a "truck" for purposes of section 212.1 of the Act. The Board further found that Calambas did appear to have paid all costs associated with licensing and operating his vehicle and superficially appeared to have maintained a separate business identity, but noted on the record that Calambas did not speak English well and plaintiff drafted the agreement. Relying on precedent pertaining to section 212 of the Act's general independent contractor exemption, the Board held that Calambas could not function as an independent contractor and upheld the referee's award of benefits. The circuit court affirmed the Board's decision on appeal.

## ANALYSIS

### I. Standard of Review

When appealing an administrative decision to the appellate court where a circuit court has reviewed an administrative agency's decision, this court reviews the decision of the board, not the circuit court. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008); *Pascente v. County Officers Electoral Board*, 373 Ill. App. 3d 871, 873 (2007); *Lockhart v. Cook County Officers Electoral Board*, 328 Ill. App. 3d 838, 841 (2002). The Illinois Supreme Court has "identified three types of questions that a court may encounter on administrative review of an agency decision: questions of fact, questions of law, and mixed questions of fact and law." *Cinkus*, 228 Ill. 2d at 210, citing *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 203-04 (1998). " '[T]he applicable standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law.' " *Cinkus*, 228 Ill. 2d at 210, quoting *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board State Panel*, 216 Ill. 2d 569, 577 (2005), citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001).

The parties disagree on the standard of review to be applied to the question of whether Calambas' Corolla is a truck under section 212.1 of the Act. Plaintiff argues that this is an issue of statutory interpretation, a pure question of law that is reviewed *de novo* by this court. *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 370 (2007); *AFM Messenger Service*, 198 Ill. 2d at 390. The Board, on the

other hand, argues that this is the quintessential mixed question of law and fact reviewable under the deferential clearly erroneous standard of review. *Chicago Messenger Service v. Jordan*, 356 Ill. App. 3d 101, 107 (2005); *Carpetland USA, Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002).

A reviewing court is to take an administrative agency's findings and conclusions on questions of fact as *prima facie* true and correct, and when examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. Rather, a reviewing court is limited to ascertaining whether such findings of fact are against the manifest weight of the evidence, bearing in mind that an administrative agency's factual determinations are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Cinkus*, 228 Ill. 2d at 210-11, citing *City of Belvidere*, 181 Ill. 2d at 204.

"Mixed questions of fact and law 'are "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard ***." ' " *Cinkus*, 228 Ill. 2d at 211, quoting *American Federation of State, County & Municipal Employees*, 216 Ill. 2d at 577, quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982). Under these circumstances, the fact finder examines the legal effect of a given set of facts and the fact-finding is inseparable from the application of law to those specific facts. *Chicago Messenger Service*, 356 Ill. App. 3d at 106-07. This standard is largely deferential toward the agency rendering the decision and the decision will be reversed only when it is clearly erroneous. *Chicago Messenger Service*, 356 Ill. App. 3d at 107. In such cases, an administrative agency's decision will be deemed "clearly erroneous" when the reviewing court is left with the " ' "definite and firm conviction that a mistake has been committed." ' " *Cinkus* 228 Ill. 2d at 211, quoting *AFM Messenger*, 198 Ill. 2d at 391-95, quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

We are mindful that an administrative agency is charged with the administration and enforcement of the statute and courts will give deference to the agency's interpretation of any statutory ambiguities. *Hadley*, 224 Ill. 2d at 370; *Taddeo v. Board of Trustees of the Illinois Municipal Retirement Fund*, 216 Ill. 2d 590, 595 (2005); *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 48 (2002); *Carson Pirie Scott & Co. v. State of Illinois Department of Employment Security*, 131 Ill. 2d 23, 34 (1989); *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152 (1983). Accordingly, " '[a] court will

not substitute its own construction of a statutory provision for a reasonable interpretation adopted by the agency charged with the statute's administration.' " *Hadley*, 224 Ill. 2d at 371, quoting *Church v. State*, 164 Ill. 2d 153, 162 (1995), citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984). However, reviewing courts are not bound by an agency's interpretation that conflicts with the statute, is unreasonable, or is otherwise erroneous. *Hadley*, 224 Ill. 2d at 371, citing *Taddeo*, 216 Ill. 2d at 595; *Press v. Code Enforcement Board of Appeals*, 149 Ill. 2d 281, 285 (1992); *Carson Pirie Scott*, 131 Ill. 2d at 34.

■ Specifically, here, we are called upon to decide whether the legislature intended that the word "truck" could be construed to include a Toyota Corolla for purposes of the Act and whether the Department's definition is consistent with that intent. Issues of statutory interpretation, such as the one presented in this case, are questions of law and our review is *de novo*. *Hadley*, 224 Ill. 2d at 370; *Taddeo*, 216 Ill. 2d at 595; *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002). We will therefore apply a d*e novo* standard of review to the construction of the word "truck" in the case *sub judice*.

## II. Exemption Under Section 212.1 of the Act

On appeal plaintiff argues, *inter alia*, that the Board erred in finding that Calambas did not drive a "truck" or maintain a separate business identity. The Board argues, among other things, that neither its interpretation of the word "truck" nor its findings that plaintiff failed to meet its burden under section 212.1 of the Act were clearly erroneous. See *Quad Cities Open, Inc. v. City of Silvis*, 208 Ill. 2d 498, 507 (2004) (holding that when interpreting tax exemption statutes, we strictly construe the statute in favor of taxation and against exemption); *Streeterville Corp. v. Department of Revenue*, 186 Ill. 2d 534, 539-40 (1999) (finding that the taxpayer seeking exemption carries the burden of proving entitlement by clear and convincing evidence). The Board further argues that if any of its findings under section 212.1 of the Act standing alone is affirmed, the Board prevails on appeal. We agree with the Board to the extent that if any one of the criteria enumerated in section 212.1 of the Act is not proved, plaintiff will not be entitled to the exemption it seeks under the Act. Since we conclude that Calambas' 1997 Toyota Corolla is not a "truck" under section 212.1 of the Act, we need not address the other issues raised by plaintiff in his appeal.

■ Section 212.1 of the Act, entitled "Truck Owner-Operator," states:

"(a) The term 'employment' shall not include services performed by an individual as an operator of a truck, truck-tractor, or tractor, provided the person or entity to which the individual is contracted for service shows that the individual:

(1) Is either:

(i) Registered or licensed as a motor carrier of real or personal property by the Illinois Commerce Commission, the Interstate Commerce Commission, or any successor agencies, or

(ii) Operating the equipment under an owner-operator lease contract with the person or entity, when the person or entity is registered, licensed, or both, as a motor carrier of real or personal property licensed by the Illinois Commerce Commission, the Interstate Commerce Commission, or any successor agencies; and

(2) Has the right to terminate the lease contract and thereafter has the right to perform the same or similar services, on whatever basis and whenever he or she chooses, for persons or entities other than the person or entity to which the individual is contracted for services;

(3) Is not required by the person or entity to which the individual is contracted for services to perform services, or be available to perform services, at specific times or according to a schedule or for a number of hours specified by the person or entity, provided that pickup or delivery times specified by a shipper or receiver shall not be deemed specified by the person or entity;

(4) Either leases the equipment or holds title to the equipment, provided that the individual or entity from which the equipment is leased, or which holds any security or other interest in the equipment, is not:

(i) The person or entity to which the individual is contracted for service, or

(ii) Owned, controlled, or operated by or in common with, to any extent, whether directly or indirectly, the person or entity to which the individual is contracted for services or a family member of a shareholder, owner, or partner of the person or entity;

(5) Pays all costs of licensing and operating the equipment (except when federal or State law or regulation requires the carrier to pay), and the costs are not separately reimbursed by any other individual or entity; and

(6) Maintains a separate business identity, offering or advertising his or her services to the public, by displaying its name and address on the equipment or otherwise." 820 ILCS 405/212.1 (West 2004).

Plaintiff states the issue is whether a Toyota Corolla can be a "truck" for purposes of an exemption under section 212.1. In support of its contention that a Corolla is a truck under the Act, it cites to Title 56, section 2732.205(d)(1), of the Illinois Administrative Code (the Code) (56 Ill. Adm. Code §2732.205(d)(1), added at 21 Ill. Reg. 9459, eff. July 2, 1997), which states " '[t]ruck' has the meaning ascribed to it in Section 1—211 of the Illinois Vehicle Code" (the Vehicle Code). Section 1—211 of the Vehicle Code reads, "Every motor vehicle designed, used, *or* maintained primarily for the transportation of property." (Emphasis added.) 625 ILCS 5/1—211 (West 2004). Based on the undisputed fact that Calambas used his Toyota Corolla to transport property (checks) for approximately 12 hours a day, 6 days a week, we find that the use of the Corolla was primarily for the transportation of property. Plaintiff argues that the Board erred in not construing it as such because the Department defines the word "truck" broadly enough to encompass a Corolla in section 2732.205 of the Code, which cannot be ignored by an administrative agency once promulgated pursuant to statutory authority. *Margolin v. Public Mutual Fire Insurance Co.*, 4 Ill. App. 3d 661, 666-67 (1972). Furthermore, plaintiff asserts that administrative rules and regulations must be construed under the same standards which govern construction of statutes, and like statutes, administrative rules and regulations enjoy a presumption of validity. *Northern Illinois Auto Wreckers & Rebuilders Ass'n v. Dixon*, 75 Ill. 2d 53, 58 (1979). A reviewing court may set aside administrative regulations only if they are clearly arbitrary, capricious or unreasonable. *Midwest Petroleum Marketers Ass'n v. City of Chicago*, 82 Ill. App. 3d 494, 501 (1980).

The Board responds that plaintiff failed to meet its burden of proving it was entitled to the exemption under section 212.1 of the Code because Calambas was not the operator of a truck. The Board argues that a Corolla is a passenger vehicle and not a "truck" under the common understanding of the word.[2] Nor is a Corolla a "truck" within the meaning of section 212.1 of the Code. The Board relies on the unambiguous nature of the word "truck" and intent of the legislature as support for its position. Specifically, it argues that the legislature intended that the word "truck" be construed in context, taking into consideration the other vehicles identified in section 212.1

---

[2]In case number 1—07—2029, plaintiff filed a motion in this court to strike portions of the Board's brief which cite to an Internet Web site referencing certain classification information for the Toyota Corolla. We deny plaintiff's motion to strike; however, we note that the information to which the Board cites played no role in our decision.

of the Code (namely, "truck-tractor" and "tractor"); construing section 2732.205 of the Code as applying to a Corolla is contrary to the intent and purpose of section 212.1 of the Act (*Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 371 (2007)); and the words "and" and "or" are frequently inaccurate in legislation and courts should substitute "and" for "or" and vice versa when demanded by the context of the legislation (*Goldblatt v. City of Chicago*, 30 Ill. App. 2d 211, 217 (1961)).

We agree with the Board and find that the legislature intended section 212.1 of the Act to apply only to trucks as the word is commonly understood and plaintiff's interpretation of section 2732.205 of the Code expands the definition of the word "truck" to the point of inconsistency with the intent and purpose of the Act. Section 100 of the Act sets forth the General Assembly's declaration of public policy relative to unemployment insurance. It states:

> "As a guide to the interpretation and application of this Act the public policy of the State is declared as follows: Economic insecurity due to involuntary unemployment has become a serious menace to the health, safety, morals and welfare of the people of the State of Illinois. Involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. Poverty, distress and suffering have prevailed throughout the State because funds have not been accumulated in times of plentiful opportunities for employment for the support of unemployed workers and their families during periods of unemployment, and the taxpayers have been unfairly burdened with the cost of supporting able-bodied workers who are unable to secure employment. Farmers and rural communities particularly are unjustly burdened with increased taxation for the support of industrial workers at the very time when agricultural incomes are reduced by lack of purchasing power in the urban markets. It is the considered judgment of the General Assembly that in order to lessen the menace to the health, safety and morals of the people of Illinois, and to encourage stabilization of employment, compulsory unemployment insurance upon a statewide scale providing for the setting aside of reserves during periods of employment to be used to pay benefits during periods of unemployment, is necessary." 820 ILCS 405/100 (West 2004).

We acknowledge that an agency's interpretation is relevant where there is a reasonable debate about the meaning of the statute. *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005), citing *Harrisonville Telephone Co. v.*

*Illinois Commerce Comm'n,* 212 Ill. 2d 237, 247 (2004). However, a reviewing court is not bound by an agency's interpretation of a statute. *Comprehensive Community Solutions,* 216 Ill. 2d at 471, citing *Envirite Corp. v. Illinois Environmental Protection Agency,* 158 Ill. 2d 210, 214 (1994). Bearing in mind the purpose stated in section 100 of the Act and the deference courts are to afford administrative agencies, plaintiff and the Board find themselves curiously at odds with each other where plaintiff seeks to rely upon section 2732.205 of the Code because of its breadth in defining "truck" and the Board does not want to resort to the Department rules to define "truck" because the text of the statute is clear and unambiguous. Although unstated by the Board, the apparent reason for ignoring section 2732.205 of the Code is that plaintiff's argument regarding the primary use of the Corolla has some merit and the Department's rule could, theoretically, be applied to a Corolla under these circumstances.[3] The question presented to us is, what is a truck?

With regard to statutory construction, Illinois courts are to, first and foremost, ascertain and give purpose to the legislature's intent. *People v. Fort,* 373 Ill. App. 3d 882, 885 (2007), citing *People v. Ward,* 215 Ill. 2d 317, 324 (2005). The first step is to look to the language of the statute we are attempting to construe. *Castaneda v. Illinois Human Rights Comm'n,* 132 Ill. 2d 304, 318 (1989). The best indication of legislative intent is the " 'plain and ordinary meaning of the language used.' [Citation.]" *Fort,* 373 Ill. App. 3d at 885. In addition, this court and our supreme court have previously held that "[w]e are permitted 'to turn to a dictionary when determining the meaning of an otherwise undefined word or phrase.' " *Fort,* 373 Ill. App. 3d at 885-86, quoting *People v. Skillom,* 361 Ill. App. 3d 901, 909 (2005), citing *Ward,* 215 Ill. 2d at 325; *Madison Mutual Insurance Co. v. Kessler,* 376 Ill. App. 3d 1121, 1128 (2007), citing *In re Application of the County Treasurer,* 343 Ill. App. 3d 122, 125 (2003). Furthermore, "statute[s] should be evaluated as a whole, with each provision construed in connection with every other section." *Paris v. Feder,* 179 Ill. 2d 173, 177 (1997), citing *Abrahamson v. Illinois Department of Professional Regulation,* 153 Ill. 2d 76, 91 (1992).

---

[3]The evidence in the record is undisputed that for an average of 10 to 12 hours a day, 6 days a week, the Corolla at issue was used to transport property. Therefore, because we will not substitute the word "and" for "or" in section 212.1 of the Act as urged by the Board, plaintiff's interpretation of the Department's rule would, in our view, include every motor vehicle, including a Toyota Corolla, that is primarily used for transporting goods.

Merriam-Webster's Third New International Dictionary of the English Language defines "truck" as "an automotive vehicle built for the transportation of goods on its own chassis" or "a motorized vehicle equipped with a swivel for hauling a trailer." Webster's Third New International Dictionary 2454 (1993). "Tractor" is defined as "a 4-wheeled or caterpillar-tread rider-controlled automotive vehicle used esp[ecially] for drawing agricultural or other implements," and "tractor-truck" is defined as a "motive power unit in the form of a truck with short chassis and no body used in a combination highway freight vehicle." Webster's Third New International Dictionary 2421 (1993).

Immediately following the word "truck" in section 212.1 of the Act, the legislature also referred to a "tractor" and "truck tractor." It is clear that the legislature was well aware of the plain and ordinary meaning of the term "truck" because it used it in conjunction with other types of motorized vehicles used to pull trailers and other implements. Generally speaking, where a statute lists the things to which it refers or includes, an inference arises that omissions should be understood as excluded. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 442 (1992). Although we are aware that this inference is not a rule of law and does not trump legislative intent (see *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992)), we find indicia of intent in the language where the legislature entitled section 212.1 of the Act "Truck Owner-Operator" as opposed to something broader, such as "Delivery Driver Operator" or "Delivery Service Drivers." Moreover, if the legislature intended to include Toyota Corollas or any other passenger vehicle within the reach of section 212.1, it simply could have added the words "any motor vehicle" instead of specifically listing "truck, tractor and truck-tractor." There is no hint in section 212.1 of the Act that a passenger vehicle was intended to be included for purposes of the exemption. Absent any indication that the legislature intended "truck" to be defined in a way that a Corolla would be included, the Act should be given a consistent and plain meaning. See generally *Madison Mutual Insurance Co.*, 376 Ill. App. 3d at 1126-28. We therefore find that the plain and ordinary meaning of the word "truck," as supported by the dictionary definition, does not include passenger automobiles and the legislature neither envisioned nor intended that a Toyota Corolla would be considered a "truck" for purposes of section 212.1 of the Act.

While we agree with plaintiff's argument that the Department may not ignore its administrative rules and the Board must apply them as written, we find it important to point out that " '[r]egulatory intent must be ascertained from a consideration of the entire scheme,

its nature, its object and the consequences resulting from different constructions.' " *People v. Carpenter*, 385 Ill. App. 3d 156, 160 (2008), quoting *People v. Wilhelm*, 346 Ill. App. 3d 206, 208 (2004). However, as a reviewing court, we will not construe a regulation in a manner that would lead to consequences that are absurd, inconvenient, or unjust. *Carpenter*, 385 Ill. App. 3d at 160, citing *Wilhelm*, 346 Ill. App. 3d at 208. In our view, construing section 212.1 of the Act as applying broadly to include Corollas, even though the Department's administrative definition could conceivably be applied to a Corolla, not only impermissibly expands and alters the plain and common understanding of the statute's text (*Northern Illinois Automobile Wreckers & Rebuilders Ass'n v. Dixon*, 75 Ill. 2d 53, 60 (1979) (finding that a statute may not be "altered or added to by the exercise of a power to make rules and regulations thereunder")), but also leads to an absurd and inconsistent result with the purpose of the Unemployment Insurance Act. No reasonable person could conclude that the word "truck," as understood in a plain and ordinary manner, refers to a four-door Toyota Corolla.

Although we have concluded that section 212.1 of the Act was not ambiguous and the Board was correct in not applying the exemption to a Corolla, we find further support for our conclusion on the legislature's intent in the history pertaining to House Bill 398, which ultimately was passed and became section 212.1 of the Act. The House transcript of the 89th General Assembly, which memorialized the debate relating to House Bill 398 reads, in pertinent part:

"[REPRESENTATIVE HOFFMAN]: Now, it's my understanding that Amendment #1, which became the Bill, essentially indicates and exempts certain *truck drivers* from unemployment insurance and I understand, I heard your explanation and you indicated that this closes a loophole with regard to, I believe, the definition of employment. Could you further explain exactly what that loophole, you're closing, specifically does ***[?]
***

[REPRESENTATIVE WEAVER]: *** We finally think we have some language that sets forth a crisp and clean definition as to exactly what is an independent contractor, whereby the [d]epartment is given direction. Previously, they were forced to ask *trucking company* owners *** to pay unemployment and workman's compensation taxes on people who owned their own businesses and worked for them on a contractual basis and the strange part of it is, those *contract truckers*, independent contractors, even though those benefits were being paid on their behalf could never collect them, simply because they didn't fall within the guidelines of the DES. ***

\*\*\*

[REPRESENTATIVE HOFFMAN]: Representative, this Amendment in no way expands who this applies to. Instead, it *only* applies to the *trucking industry* and *nobody else*. Is that right?
\*\*\*

[REPRESENTATIVE WEAVER]: That is correct." (Emphasis added). 89th Ill. Gen. Assem., House Proceedings, March 23, 1995, at 234-35 (statements of Representatives Hoffman and Weaver).

On the thirty-ninth legislative day of the 89th General Assembly, the following colloquy occurred between representatives on the house floor regarding House Bill 398:

"[REPRESENTATIVE WEAVER]: Thank you, Mr. Speaker. Ladies and Gentlemen of the House, this is the Bill that we've discussed time and time again, not only in committee but on the floor. It establishes in statute the identification and definition of the independent contractor. \*\*\* Thanks to the Speaker's offices, he called the players together, the *trucking industry* and also the folks from the Teamsters Union. \*\*\* So this is, I guess, the best of the Agreed Bill process that now has established what is an independent contractor in law. And the department signed off on it, the Teamsters have signed off on it and the *trucking industry* has signed off on it. \*\*\*

\* \* \*

[REPRESENTATIVE HOFFMAN]: And that Amendment is the Amendment that the AFLCIO, the Teamsters, as well as the *trucking industry* are all in agreement and in support of, is that correct?
\*\*\*

[REPRESENTATIVE WEAVER]: That is correct.
\*\*\*

[REPRESENTATIVE HOFFMAN]: Is there anybody that you know of, any organization against this Bill, now currently as it's written?
\*\*\*

[REPRESENTATIVE WEAVER]: If there is we haven't been able to find them.
\*\*\*

[REPRESENTATIVE HOFFMAN]: This is a Bill that would treat *truck* and *tractor operators* as independent contractors rather than employees and therefore would exclude them from coverage under unemployment insurance, isn't that right?
\*\*\*

[REPRESENTATIVE WEAVER]: Well, it sets forth in statute legal guidelines as to what makes up, what is an independent *trucker* and to be real honest according to the department's rules

they were excluded from benefits before. It just ... what this does is actually prevent the department from requiring the taxes be paid on those benefits that the independent *truckers* couldn't collect.
\*\*\*

[REPRESENTATIVE HOFFMAN]: It's my understanding that this Bill sets up a variety of criteria for independent contractors. So that then they will not be or they will be viewed as independent contractors rather than employees for the purposes of the coverage under the Unemployment Insurance Act. Therefore, the taxes wouldn't have to be paid by the *trucking company*, is that right?
\*\*\*

[REPRESENTATIVE WEAVER]: I'm not sure I exactly understood your question. But what it does is set up the criteria for determining an *independent trucker* so those unemployment taxes will not have to be paid, if that [*sic*] what you meant.
\*\*\*

[REPRESENTATIVE HOFFMAN]: Real briefly, could you just briefly run through some of the high points of the criteria? Only because I think there may be [some] concern, I understand everybody's signed off on it but we don't want to put employees in a situation if they're legitimate employees and they would get laid off for some reason of not being able to collect unemployment and feed their family. So, if you could just briefly go through some of the criteria, we on this side of the aisle would appreciate it.
\*\*\*

[REPRESENTATIVE WEAVER]: Okay. First of all, the *trucker* would have to have a bountified [*sic*] equity interest in his or her own *rig* and would have to be actually an operating business on their own. They would have to have the right to perform the same or similar services for other than that particular company. They would also not be able to dictate to *truckers* schedules other than respect to pick up or delivery within a certain period of time to the shipper or receiver. And fourth, the *trucker* would have to be responsible for all licensing and operating costs associated with \*\*\* his or her *rig*. And finally, the *trucker* would have to operate a separate business identity. They would not actually be an employee but they would actually be the business owner from the company he's \*\*\* contracting with.

\* \* \*

[REPRESENTATIVE HOFFMAN]: So this would remove...this would I guess it could possibly remove several maybe thousands of individuals from the unemployment insurance roles, is that right?
\*\*\*

[REPRESENTATIVE WEAVER]: Well, what it would do would be to prevent *trucking company*...

\*\*\*

[REPRESENTATIVE WEAVER]: it would prevent *trucking companies* that contract or sub-contract with other companies from paying unemployment insurance benefits or taxes on those subcontractors. But it specifies in clear language, see now we function under what they call the a-b-c test which is vague at best. And the department feels kind of hog tied, they can't continue to function under what they have now but they have not been by rule able to change what...the way they're doing it. So they've asked us, through statute, to establish a more I guess lucid or clear criteria as to what makes up an independent contractor." (Emphasis added). 89th Ill. Gen. Assem., House Proceedings, April 5, 1995, at 122-26 (statements of Representatives Hoffman and Weaver).

Lastly, when asked by Representative Lang whether Representative Weaver would consider amending House Bill 398 to "comply with the [Federal] Motor Voter Act," Representative Weaver replied "I'm not sure I understand your question. You want *truck drivers* to vote in their *rigs*, is that it?" (Emphasis added.) 89th Ill. Gen. Assem., House Proceedings, April 5, 1995, at 128 (statements of Representatives Lang and Weaver).

The legislative history on section 212.1 of the Act refers only to the trucking industry and not to plaintiff's business, or any other business or industry. There are no references to any other type of vehicle other than a truck, rig or tractor. There is no reference to any other type of industry other than trucking. There are many references to trucks, truckers, rigs, the trucking industry and trucking companies. Moreover, the debates are peppered with assertions that it was intended to apply to, and only to, independent truckers in the trucking industry. Despite plaintiff's assertion that section 2732.205 of the Code contemplates the inclusion of a Toyota Corolla, we find that the legislature did not intend the statute to be read so expansively. To the extent that the Department's adoption of the Vehicle Code's definition of the word "truck" can be construed inconsistently with the intent of the legislature, we are not bound by it and decline to interpret the regulation as plaintiff urges. See generally *Hadley*, 224 Ill. 2d 365.

## CONCLUSION

■ For the foregoing reasons, we hold that the word "truck" as referred to in section 212.1 of the Act means an automotive vehicle built for the transportation of goods on its own chassis" or "a motorized vehicle equipped with a swivel for hauling a trailer." Websters Third New International Dictionary 2454 (1993). Based on the undisputed facts in the record, the Toyota Corollas at issue were neither built nor designed for hauling or transporting goods on their

own chassis nor were they equipped with a swivel for hauling a trailer. We further hold that plaintiff's interpretation of section 2732.205 of the Code conflicts with the legislature's intent relative to section 212.1 and is inconsistent with the purpose of the Act. We will not construe section 2732.205 of the Code to include a Toyota Corolla. Accordingly, the decision of the Board in case Nos. 1—07—1902 and 1—07—2029 finding that plaintiff failed to prove it was exempt from unemployment insurance tax is affirmed.

Affirmed.

JOSEPH GORDON and CAHILL, JJ., concur.